THE STATE v. MRS. J. A. PETERS, Appellant.

**Division Two, May 26, 1914.**

1. **CODEFENDANTS: Competency as Witnesses.** Defendant and Mrs. C. were jointly charged with theft. A severance was granted, and Mrs. C. was tried first. After her case was submitted to the jury, and before verdict, defendant's trial was begun and after the hearing of a part of the evidence in defendant's case, a verdict of guilty was brought in against Mrs. C. *Held,* that while at the beginning of defendant's trial Mrs. C. (being a codefendant) was not a competent witnesse against defendant, her incompetency was removed at once by her conviction.

2. **CONTINUANCE: Diligence of Applicant: Surprise.** Defendant and Mrs. C. were jointly charged with theft. A severance. was granted and Mrs. C. was tried first. During her trial she warned defendant that if defendant did not testify for her and she should be convicted, she would testify against defendant. Mrs. C. was found guilty during the progress of defendant's trial and was offered as a witness by the State. *Held,* that defendant, who had not testified for Mrs. C., if she wished

State v. Peters.

a continuance for surprise and to obtain evidence to impeach the witness, should have applied for it before she went to trial and not afterward.

3. **EVIDENCE: Of Prior Statements of Witness.** Where a co-defendant, after a severance and her own conviction, testified against defendant, evidence of her prior statements that she herself was innocent, was not material.

4. **CONTINUANCE: Application: Impeachment.** An applic- on for a continuance in order to obtain evidence impeaching a witness, must give the names of the witnesses by whom the applicant expects to prove the impeaching facts.

5. ————: ————: ————: **Former Conviction.** Under Sec. 6383, R. S. 1909, former convictions may be shown to impeach a witness in two ways: By cross-examination of the witness or by the record of the conviction; and before a defendant would be entitled, after going to trial, to a continuance for the purpose of obtaining evidence of such former convictions, he must attempt to elicit that evidence by cross-examination.

6. ————: ————: ————: ————: **Cumulative Evidence.** A defendant who has proved, by way of impeachment, that a witness for the State had been convicted of larceny, is not entitled to a continuance in order to obtain evidence that the witness had also been convicted of other crimes.

7. ————: **Discretion: Appeal.** The granting or refusing of postponements for surprise rests largely in the discretion of the trial court, and absent a clear abuse of that discretion the Supreme Court will not interfere.

Appeal from Jasper Circuit Court.—*Hon. Joseph D. Perkins*, Judge.

AFFIRMED.

*Hugh C. Brady* for appellant.

(1) The matter of postponement of the trial in order to give the defendant an opportunity to procure the presence and the benefit of the testimony of witnesses, rested largely in the discretion of the court and the judgment should not be reversed unless it clearly appears that such discretion was abused, and unjustly exercised. State v. Newsum, 129 Mo. 162. (2) While the State may be allowed to endorse the name of a wit-

ness even after the trial has commenced, "but if the defendant is taken by surprise thereby, the court should extend to him all possible facilities for a fair and impartial trial, and if necessary, may delay or even continue the hearing of the case until he has ample. opportunity to prepare to meet the evidence of the witness." State v. Cook, 30 Kan. 85. In The State v. Sorter, 52 Kan. 31, the court held that the defendant was entitled to a postponement for a reasonable time to allow him to meet the testimony of a witness introduced and endorsed at the time of the trial, but as the court had given the defendant forty-eight hours and the witnesses he required were in the immediate vicinity it held that no error was committed. (3) On general principles of justice, it would seem reversible error to refuse time for such purpose if the accused can show he is surprised. State v. Jones, 2 Kan. App. 1; State v. Kelly, 14 Wash. 44.

*John T. Barker,* Attorney-General, and *Shrader P. Howell* for the State.

(1) The defendant alleges in her second, third, fourth, and fifth grounds of her motion for a new trial that the court erred in refusing to grant a continuance of the trial because she was taken by surprise when Mrs. T. J. Calvin, the coindictee, was offered as a witness for the State. In the first place, an examination of the statement made by counsel for appellant when presenting this matter to the trial court will hardly sustain this contention. The statement referred to is as follows: "But yesterday was the first intimation we had, when she threatened this defendant if she didn't take the witness stand in this (that) case, after we had asked for a severance, and testify that she was not guilty, she said: 'I am going to swear that we turned these diamonds over to your husband, and I am going to take the stand and swear that you are

guilty.' " The record shows that a severance was granted on February 7, 1913; that the codefendant, Mrs. T. J. Calvin, was tried first, and it would appear the inference may be fairly drawn that the statement referred to was brought to the knowledge of defendant prior to the commencement of her own trial. If this were true, even in the absence of other grounds, it would show that the defendant failed to exercise due diligence and meet the other requirements made by the statute in this respect, and this fact alone would be amply sufficient to sustain the action of the court. It has been the uniform ruling of this court that the question of continuance is within the discretion of the trial court, and in the absence of an abuse of that discretion, this court will not interfere. Sec. 5204, R. S. 1909; State v. Hollenscheit, 61 Mo. 305; State v. Cummings, 189 Mo. 641; State v. Temple, 194 Mo. 250; State v. McKenzie, 228 Mo. 397; State v. Cain, 247 Mo. 705; State v. Creely, 162 S. W. 737. It is also shown by the record that counsel for defendant in his argument before the court below based the application for continuance solely on the ground that time should be granted in order that evidence might be secured for the purpose of impeaching the character of the witness, Calvin. Testimony of this nature does not go to the question of the guilt or innocence of the defendant, but merely to the matter of affecting the credibility of a witness in the case. Although subsequent to the application for continuance, Mrs. Calvin was permitted to take the stand as a witness, yet no attempt was made to lay a foundation for her impeachment nor to challenge the truth of the statement above attributed to her. Where the facts to which the absent witnesses would testify, if present, are merely cumulative or touch only the credibility of some witness in the case, such grounds are insufficient to convict the trial court of error in refusing a continuance. State

v. Hilsabeck, 132 Mo. 357; State v. Howell, 117 Mo. 309; State v. Devorss, 221 Mo. 474. Moreover, at the time of the presentation of defendant's application, the jury had been sworn, six witnesses for the State had been heard, and thus the defendant had been placed in jeopardy. In such circumstances there was no course open but for the trial court to deny the continuance requested. To have stopped the trial at that stage and discharge the jury would have laid open the way for defendant to successfully interpose a plea of former jeopardy when next put on trial. Art. 2, sec. 23, Constitution; State v. Manning, 168 Mo. 418. (2) This court has laid down the rule which has been recognized in a long line of cases, that where one or two persons jointly indicted has either pleaded guilty or has been convicted, he is competent to testify against the other defendant, and can do so without judgment having been rendered against him. The witness, Calvin, had been tried and found guilty on the day prior to the trial of defendant herein, and was therefore a competent witness for the State. Secs. 5241, 6383, R. S. 1909; State v. Jackson, 106 Mo. 177; State v. Minor, 117 Mo. 305; State v. Young, 153 Mo. 449; State v. Myers, 198 Mo. 251; State v. Shelton, 223 Mo. 134; State v. Conway, 241 Mo. 278.

WILLIAMS, C.—Defendant and one Mrs. T. J. Calvin were jointly charged with the crime of larceny of certain diamonds of the value of two hundred and ninety-five dollars. Upon application of the defendant a severance was granted. Mrs. Calvin was tried first and the jury returned a verdict of guilty in her case while the trial of the defendant was in progress. The defendant was found guilty and her punishment assessed at two years in the penitentiary.

Larceny.

The evidence tends to show that the diamonds, consisting of one large diamond ring and a pair of

diamond earrings were stolen from the store of O. C. Zaumseil in Webb City, Missouri, on the seventh day of September, 1912. On that day defendant and Mrs. Calvin went into the jewelry store and asked the proprietor to show them some diamonds. Complying with the request, the proprietor took some diamonds from his safe and placed them upon the top of the show case near the front part of the store. Among the diamonds thus exhibited was one seven-eighths carat diamond ring, valued at $185, a pair of earrings valued at about $100, and about one-half dozen small diamond rings. Each diamond was attached to a small white cardboard about three inches long and two inches wide. While exhibiting the diamonds the proprietor noticed some smut on one of the stones and stepped aside for the purpose of getting a rag from a nearby workbench. In doing this his back was turned to defendant and her associate. When the proprietor later turned around they had reached the front door going out and at this time the defendant said to the proprietor: "We will look elsewhere." This sudden departure of the two women aroused the suspicions of the proprietor and upon examination he discovered that the large diamond ring and the pair of diamond earrings were missing. It was shown that no other person was in a position to have taken the diamonds during the time they were being exhibited. Upon leaving the store defendant and her associate walked south along the street and about twenty feet south of the front door of the jewelry store a third woman (apparently waiting for them) joined them and the three proceeded southward a few feet and turned into a stairway landing. After going into the stairway landing, defendant was seen to hand to the third woman some white object and thereupon the three women emerged from the stairway, the third woman going north and the other two going south. Defendant and her associate went by street car to Jop-

lin, where, upon their arrival, they were arrested. The diamonds were never recovered.

After the jury returned a verdict of guilty against the Calvin woman the State introduced her as a witness and she testified that she and the defendant went into the jewelry store on the above-mentioned date and asked to be shown some diamonds. Complying with the request, the proprietor exhibited the diamonds, placing them upon a show case. This witness further testified that when the proprietor turned his back the defendant took the diamond ring and diamond earrings and that she and defendant immediately left the store; that after leaving the store they met the third woman, above mentioned, to whom defendant delivered the diamonds. That before entering the store, defendant had placed the third woman a short distance south of the entrance to the jewelry store, as witness says: "To receive the jewelry, if we are fortunate enough to get any."

After the Calvin woman was introduced as a witness by the State, defendant, on the ground of surprise, asked for time to file an affidavit of surprise and requested the court to postpone the further hearing of the trial for a few days to enable her to procure testimony with which to impeach the witness and affect her credibility as a witness. In making this request, defendant's counsel stated that the witness was a codefendant, and that at the time the present trial was begun, it was not known and could not be foreseen that the witness then incompetent would become competent by reason of a conviction occurring after the present trial had started; and that the witness's name was not indorsed on the back of the information and that defendant had no notice of any kind from the State that they intended to use this witness; and further stated that if the court would postpone, for a reasonable time, the further hearing of the testimony in the case, defendant would be able to produce testimony

affecting the credibility of the witness and to show that the witness had heretofore made statements that she and defendant were innocent of the crime charged, and that they would be able to show that the witness had been convicted at Kansas City, Missouri, of the crime of keeping a bawdyhouse and of permitting girls under age to remain in said bawdyhouse. The request was refused by the court and defendant excepted.

Defendant testified in her own behalf that she lived in Kansas City, Missouri, and had known Mrs. Calvin about three years; that Mrs. Calvin had formerly lived in Oklahoma and just prior to this occasion invited defendant to go on a visit with her to Oklahoma. That they arrived in Joplin on September 6, 1912; that they spent that day in Joplin and in taking a street car trip to Galena, Kansas. On Saturday morning, the day of the alleged theft, defendant and Mrs. Calvin went to Carthage, Missouri, to visit some of Mrs. Calvin's friends there. While in Carthage they visited a jewelry store. Returning from Carthage they stopped off at Webb City and first went into Mr. Kelley's jewelry store where Mrs. Calvin looked at some diamonds but did not make a purchase. From there they went to Mr. Zaumseil's jewelry store. Witness did not remember whether she or Mrs. Calvin asked to look at diamonds at this place but she remembered that the highest-priced diamond ring shown them by Mr. Zaumseil was one priced at eighty-five dollars; that Mrs. Calvin told the proprietor that he did not have what she wanted and that they would look elsewhere. Defendant denied taking the diamonds and disclaimed any knowledge as to who did take them; that she had no intention of purchasing any diamonds herself; that she was thirty-eight years old and had never been convicted of any crime. She further testified that during Mrs. Calvin's trial which was "yesterday" Mrs. Calvin told her that if she did not take the stand and swear in Mrs. Calvin's favor that she, Mrs. Calvin,

if convicted, would swear against her. Defendant also proved that Mrs. Calvin had just been convicted of the larceny of these diamonds. Defendant read in evidence the depositions of three witnesses residing at Kansas City, Missouri, who testified that defendant's reputation for honesty and veracity in the community in which she lived in Kansas City was good.

The sole question of error raised by the motion for new trial and now urged by appellant as grounds for reversal of the judgment is with reference to the action of the court in refusing defendant's request for a postponement of the further hearing of the trial for a reasonable length of time in order to give her an opportunity to procure and produce testimony with which to contradict the witness Mrs. Calvin, and to affect her credibility as a witness.

Application for Continuance: Surprise.

It appears that defendant and Mrs. Calvin were jointly charged with the theft of the diamonds; that a severance was granted and Mrs. Calvin was tried first; that just after Mrs. Calvin's case was submitted to the jury and before the jury had returned a verdict, defendant's trial was begun and after the hearing of a portion of the evidence in defendant's case the jury in the Calvin case returned a verdict of guilty. It is, therefore, apparent that at the beginning of defendant's trial, Mrs. Calvin (being a co-defendant) was not a competent witness on the part of the State (State v. Chyo Chiagk, 92 Mo. 395); but that, later, by reason of her conviction, her incompetency was removed and she was, at the time of testifying, a competent witness. [State v. Minor, 117 Mo. 302; State v. Shelton, 223 Mo. 118.]

While it is true that from the above facts it could not be said that defendant could know with certainty that Mrs. Calvin would become a competent witness, or that, if she did, she would testify for the State, yet defendant's own testimony shows that during the

progress of Mrs. Calvin's trial (and presumably before defendant's trial was begun), Mrs. Calvin gave warning to defendant to the effect that if defendant did not testify in her defense and she should be convicted she would testify against defendant. Defendant did not testify for Mrs. Calvin. She, therefore, had a warning notice, prior to going to trial, that Mrs. Calvin, if convicted, would testify against her.

Proper diligence under such conditions should not permit defendant to remain silent until after the trial was begun and the jury sworn, when to grant a postponement would work an unnecessary hardship in keeping the jury in charge during the postponement; but defendant should have applied to the court before the trial was begun for such sufficient delay or continuance as would enable defendant to become prepared for the contingency of Mrs. Calvin's becoming a witness.

But even assuming, *arguendo,* that defendant was, in good faith, surprised, within the legal significance of the term, yet we are unable to say that the trial court committed error in refusing the request. This for the following reasons: Part of the evidence for the procurement of which the defendant requested time was with reference to showing that the witness had, up to that time, maintained both her own and the defendant's innocence of the crime charged. We cannot see wherein the witness's statements concerning her own innocence were material for any purpose. It is true that proof of former statements of the witness to the effect that the defendant did not steal the diamonds would, upon the laying of a proper foundation, have been admissible for the purposes of impeachment. But defendant, in requesting the postponement, does not give the name of the witness by whom she would be able to prove these statements. The rule concerning the showing to be made in applying for a continuance or postponement during the progress of the trial should not be

less exacting than that applied to continuances granted
before trial. It is always necessary in the latter in-
stance to give the name of the witness by whom the
applicant expects to prove the facts claimed. [Sec.
5204, R. S. 1909.] The remaining testimony, which
defendant requested time to produce, was with refer-
ence to the proof of former convictions of the witness
for the crime of keeping a bawdyhouse in Kansas
City. This could be proved in one of two ways, either
by the cross-examination of the witness or by the rec-
ord of the conviction. [Sec. 6383, R. S. 1909.] Here
again we find the defendant in no position to com-
plain. Defendant made no effort on the cross-
examination of the witness to prove that she had been
convicted of the other crimes. If the witness had, upon
cross-examination, admitted her former conviction
that would have avoided any necessity for postpone-
ment to procure testimony in that regard. Whether
this could have been proved by the witness, we are,
of course, unable to say. Defendant made no showing
in that regard. Under the circumstances, it was her
duty to try to make proof of the convictions in this
way, before asking time within which to produce the
record of the convictions. This for the reason that
it is a prerequisite to the granting of all continuances
that the applicant show that "he is unable to prove
such facts by any other witness whose testimony can
be as readily procured." [Sec. 5204, R. S. 1909.]
Furthermore, defendant did prove that the witness had
been convicted of larceny. The testimony concerning
conviction of other crimes was at most but cumulative,
and therefore not of sufficient importance to demand
a postponement or continuance. [State v. Olds, 217 Mo.
305.]

While it is true that, under proper conditions,
taking into consideration the actual surprise of the
defendant and the importance of the testimony for the
procurement of which defendant requests a reasonable

postponement of the trial, the trial court may and sometimes should grant a reasonable postponement of the trial in order to give defendant an opportunity to procure the further testimony made necessary by the surprise, yet the granting of the postponement is a matter resting largely in the discretion of the court and absent a clear abuse of that discretion this court will not interfere. [State v. Newsum, 129 Mo. 154.] The action of the court in the present case was clearly within the bounds of a sound discretion.

The judgment is affirmed. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of WIL-LIAMS, C., is adopted as the opinion of the court. All the judges concur.