STATE of Missouri, Respondent,

v.

Julian R. GREEN, Appellant.

No. KCD 27696.

Missouri Court of Appeals,
Kansas City District.

March 1, 1976.

Thomas M. Larson, Public Defender, R. William Bloemker, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SWOFFORD, Judge.

Appellant Green was charged by information with Robbery First Degree under Section 560.120 RSMo 1969. His jury trial resulted in conviction and a sentence of ten (10) years in the custody of the Department of Corrections. After an unavailing motion for a new trial, he appeals from such judgment.

He raises two points in support of his request for reversal. The first of these is that the court erred in failing to sustain an objection to a part of the state's closing argument wherein the assistant prosecuting attorney told the jury that if appellant were released by their verdict, he (the appellant) would return to his "business of forgery". The second point raised by appellant is that the court erred in refusing to grant a recess during the course of the trial so as to allow appellant time to secure the attendance of certain witnesses who could offer testimony in support of his defense.

A short summary of the underlying facts is sufficient for the resolution of these points. At about 1:00 o'clock a. m., June 9, 1973, two men entered the Quick-Trip Store located at 3 W. 49th Street, Kansas City, Missouri, and advised the assistant manager, Steve J. Thompson, the person then in charge of the store, that "This is a holdup".

The taller of the two men, later identified as the appellant, was carrying a chrome-plated revolver. At the direction of the robbers, Thompson opened up the cash drawer and then was forced to lie face down, on the floor of a back room. While in this position, the shorter of the two robbers struck Thompson on the back of the head with a pistol, causing a laceration and rendering him unconscious.

As the robbers left the store, one Ronald Jones, a customer who lived in the neighborhood, was entering the store and observed the appellant carrying two money bags and a chrome revolver and followed by another man, leaving the store. Jones found Thompson in the back room unconscious; the police were called, and it was found that the robbers had taken at least $45.00 from the cash drawer, bank bags, two books of Republic money orders, $120.00 in cash which was Thompson's, and Thompson's wristwatch.

Both Thompson and Jones identified the appellant from police photographs and later in a police lineup. Both made positive in-court identification of him.

The appellant testified in his own behalf; admitted that he had prior convictions for forgery and burglary; denied that he had participated in the robbery here involved; and, presented the alibi that at the time of the robbery he was sitting in a car with his girl friend, Connie Raynor, in front of the house of Connie's mother at 1202 *East* 45th Street, at least a mile from the scene of the robbery. He stated that Connie, her mother and possibly her brothers and sisters, could establish this fact. None of these supportive witnesses were produced or testified (which fact will be discussed hereafter in relation to appellant's second point.)

The appellant further testified *on direct examination* that on June 11th or June 12th, two men, Phillip Harvey and Fred Martin, came to his apartment and they had in their possession a number of Republic money orders, which he understood had

been "sneaked thieved". The following appears as part of the direct examination by appellant's counsel:

"Q. Now, Julian, did you have in your possession *a machine which is used for the forging of signatures* on money orders, checks, things of that nature?

A. I did.

Q. You did?

A. Yes.

\* \* \* \* \* \*

Q. All right. Did you cooperate with these individuals that came to see you?

A. You see, we made a deal, we made a deal, I let them use my machine in return for some of the money orders.

\* \* \* \* \* \*

Q. Were you acquainted with these two persons prior to this time?

A. Yes, I was.

Q. How did you come to know them?

A. I done time with them in the penitentiary and the county jail, and *they knew forging was my specialty—*

Q. Had you made them aware of the fact—

\* \* \* \* \* \*

THE WITNESS: *They knew forgery —that's what I'm known for, you see, and they knew it. Everybody knew it, the police.*" (Emphasis supplied)

On cross-examination, he testified that he intended "to try to cash" the money orders he had received for the use of his machine. When asked if he remembered that these were Republic money orders, he stated:

"*I definitely did. They were Republic Money Orders. That was my business at the time.* (Emphasis supplied)

The following then appears as part of the cross-examination:

"Q. *Your business is forgery,* isn't it?

A. *That's true.*

Q. And when you received these money orders you knew what they were for?

A. I sure did." (Emphasis supplied)

In the state's closing argument, the assistant prosecuting attorney, Mr. Stigall, following a statement as to the credibility of Thompson and Jones, the identification witnesses, stated:

" \* \* \* if you think they came in here and made this whole thing up; if that's what you believe that's the evidence, and if you think they are mistaken, turn him loose. *Put him back on the streets. Put him back out in his business; and you know what his business is. He told you what it is.*

MR. BLOEMKER (defense counsel): Objection. That statement is prejudicial and clearly improper.

THE COURT: Overruled.

MR. STIGALL: *He told you. He told you what his business is.* \* \*" (Emphasis supplied)

It is gleaned from appellant's brief that his basic complaint as to the foregoing trial incidents is that the prosecuting attorney was permitted to "speculate" as to future possible criminal acts or conduct of the appellant; that such comment or speculation was apparent and damaging error, prejudicial to the appellant; and, that it resulted in the jury imposing a greater sentence than the statutory minimum for Robbery First Degree. These contentions are wholly without merit, for several reasons.

■ In the first place, the appellant clearly and unequivocally testified that forgery was his "specialty" and his "business" in a rather proud and boastful fashion, it would seem, and without any expression of remorse or protestations of reform. Such words have a plain and common meaning. A man's "business" is his occupation, trade, profession, work, serious pursuits, employ-

ment, interest, concern. A "specialist" is one devoted to one line of work. Thus, a fair inference is that the appellant was, in fact, devotedly engaged in the occupation of forgery and it was invited and fair comment for the prosecutor to remark to the jury on such volunteered characterization of his habitual life-style, as affecting his credibility. The record discloses that the prosecutor confined such remarks to the very substance of appellant's testimony, couched in mild and not inflammatory language and did not predict or speculate as to the possibility of any specific future criminal activity of appellant. The cases cited by appellant on this point are clearly distinguishable.

█ Secondly, this point of error was not preserved in the motion for a new trial and thus, in fact, presents nothing for review.

Lastly, this point is not properly one for review, as plain error, under Rule 27.20(c), as asserted by appellant, even though such claimed error might have occurred (which was not the case). The statement of this court in the case of *State v. Watts*, 515 S.W.2d 854, 856[2] (Mo.App.1974) is applicable here. In *Watts*, this court said:

"* * * That finding of error is not enough; under the mandate of Rule 27.-20, the error must be such that a manifest injustice has resulted or that a miscarriage of justice has occurred. * * *"

█ The evidence of appellant's guilt in this case was strong and the court did not err in overruling his objection to the prosecutor's argument and accordingly his first point on this appeal is rejected and ruled against him.

As bearing on appellant's second point, the record shows that on the second day of the trial at the close of the state's evidence, defense counsel made an oral application for a *recess* of the trial upon the ground that on the day before, at the commencement of the trial, the appellant for the first time asked him to subpoena several witnesses and stated that he (counsel) had "not been able to locate one of those witnesses". This request was denied.

At the conclusion of the appellant's testimony his counsel again made an oral request for a recess and in a conference outside the presence and hearing of the jury the appellant and counsel stated that they wished to obtain the testimony of Connie Raynor, his girl friend, and Mattie Reed, her mother, (apparently on the issue of alibi defense). Counsel stated that a subpoena had been issued for Connie Raynor but that an investigator from his office had been unable to locate her. Also, the testimony of Fred Martin, who was in the county jail, was sought (apparently to corroborate the appellant on his account of the Republic money orders and the loan of the "forgery machine" or, perhaps, in the desperate hope that he would confess to the robbery and exonerate the appellant). Martin had been subpoenaed and the court below had ordered him brought from the jail to court. The defense also sought the testimony of Merle Hoffman, a police officer. The record is unclear as to the nature of the testimony expected from him.

The record shows that the appellant was arraigned on this charge on July 25, 1973. His trial did not begin until July 15, 1974. During this period of almost a year, he was in the county jail (except for a total of eighty-five days when he was hospitalized for psychiatric evaluation at Springfield and Fulton, Missouri). His counsel stated to the court that he had conferred with the appellant on about six occasions at the jail and had advised him of the trial setting several weeks before July 15, 1974. Counsel stated, however, that it was not until the day of the trial that appellant informed him of his desire to have any of these witnesses testify in his behalf and that it was not until the appellant's testimony on the second day of trial that counsel had any knowledge that appellant desired the testimony of Mattie Reed.

No written request for the recess was made; no affidavit was filed as to what testimony would be given by the witnesses; and, there was no showing of the availability of any of the witnesses (except Martin) or of their intention to appear.

The trial court again refused to delay the trial by granting a recess. Thereupon, the defense announced he would not call Martin to the stand.

■ It has long been the law in Missouri that the granting of a recess during the course of a trial. rests largely within the discretion of the trial court and an appellate court will not interfere with the exercise of that discretion unless it is clearly abused. *State v. Lewis*, 443 S.W.2d 186, 191[3] (Mo. 1969); *State v. Odom*, 369 S.W.2d 173, 183[3] (Mo. banc 1963), cert. denied, 375 U.S. 993, 84 S.Ct. 634, 11 L.Ed.2d 479; *State v. Miller*, 368 S.W.2d 353, 357[4] (Mo.1963); *State v. Crayton*, 354 S.W.2d 834, 838 (Mo. 1962); *State v. Thompson*, 299 S.W.2d 468, 473[12] (Mo.1957); *State v. Jackson*, 346 Mo. 474, 142 S.W.2d 45, 51[14] (1940).

■ The record in this case displays such a complete lack of diligence on the part of the defendant as to indicate that the matter of the testimony of the witnesses came as an afterthought during trial. Likewise, there was a complete lack of any showing by the defense that a recess would have made the testimony of Connie Raynor or her mother, or Hoffman, available, or even that such persons were then within the jurisdiction of the court. In Missouri, the matter of required procedures in applications for *continuances* in criminal trials because of the absence of witnesses is meticulously spelled out in Rule 25.08, Rules of Criminal Procedure. While research had not disclosed any decision applying the terms or requirements of Rule 25.08 to a situation where a *recess* or *temporary adjournment* because of the absence of evidence has been sought during trial, the court in *State v. Odom*, supra, at l.c. 183, mentions the absence of certain requirements incorporated in Rule 25.08 (without direct reference to the Rule).

The rationale of this situation was aptly stated in the ancient case of *State v. Peters*, 258 Mo. 334, 167 S.W. 520, 522[4] (1914). There, the court referred to Section 5204 RSMo 1909, which (when considered together with Section 5203) is quite similar to the present Rule 25.08, and stated:

" * * * The rule concerning the showing to be made in applying for a continuance or postponement during the progress of the trial should not be less exacting than that applied to continuances before trial. * * * "

In the final analysis, the matter rests in the sound discretion of the trial court acting in the trial atmosphere. This record discloses no abuse of discretion by the court in denying the recess sought by appellant.

The judgment is affirmed.

All concur.