WILLIAM ORMAN v. O. E. BISHOP, SUPT. OF ARK. STATE PENITENTIARY

5296                                420 S. W. 2d 908

Opinion delivered December 4, 1967

*Allan Dishongh,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Petitioner, William Orman, on February 21, 1964, entered pleas of guilty to five counts of robbery in the Pulaski County Circuit Court (First Division). The court sentenced Orman to a term of twenty-one years on each of the counts, with the sentences to run concurrently. In April, 1967, Orman filed a "petition for a Writ of Habeas Corpus," which we treat as a petition under our Criminal Procedure Rule No. 1. Counsel for petitioner was appointed by the Circuit Court, and a hearing was conducted in May. At the conclusion of the hearing, the court denied the petition, and remanded the petitioner to the custody of the warden of the state penitentiary. From such judgment, appellant (petitioner) brings this appeal.

The petition asserts that appellant was arrested about November 30, 1964, on three charges of robbery, and placed in jail in North Little Rock. It is contended that he was not allowed to contact anyone, nor was he informed of his right to legal counsel, or the right to maintain silence. The petition further alleges that he was threatened and beaten by the police and told that if he did not sign a statement, his wife (who, according to appellant, had also been arrested) would be given "time" for the robberies, and he would never leave jail alive. It is then asserted that he signed an incriminating

statement and was removed to the Pulaski County jail in Little Rock where he subsequently made bond. After three days of freedom, he was again arrested, and two additional charges of robbery were placed against him. It is contended that he was interrogated and threatened by Pulaski County officers. Appellant stated that he entered a plea of not guilty to robbery, but was informed by the court that if he did not plead guilty to the charges, "he would never get out of jail." It is contended that he was sentenced without being properly advised of his rights to legal counsel.

These allegations are somewhat at variance with some of the proof offered at the hearing by Orman. He stated that, at arraignment, he entered a plea of not guilty himself, and did not have an attorney. However, he admitted that he had employed an attorney (Charles Scales), but he said that he employed this attorney simply for the purpose of getting the money returned that the officers had taken from him when he was arrested. He did say that Scales had visited him two or three ifferent times while he was in the county jail, and had told him that he should plead guilty to the robbery charges. The evidence reflected that appellant had been charged, along with two other men, James Martin, and John Carson. Orman testified that the court appointed Scales as attorney for the other two men, but did not appoint an attorney for him. According to his testimony, he was beaten with an iron pipe by an inmate in jail, Scrappy Moore, and was taken to the University Hospital, where he remained for a few hours. Orman said that he was told by one of the inmates of the jail that something would happen to him if he didn't plead guilty, and he decided to enter this plea in order to get away from the jail. "I would rather spend 21 years down there as to be dead." He insisted that he did not enter a plea of guilty to robbery, but did say that he had entered a plea of guilty as an accessory, not knowing that an accessory was equally guilty with the principal. Orman testified that the Circuit Judge said, "If you don't

plead guilty, I will give you 5 twenty-one year sentences.''

As far as the alleged beatings by the North Little Rock Police are concerned, appellant is entitled to no relief. Officer J. E. Munns Jr., denied this testimony, stating that not a hand was placed on Orman. Munns testified that appellant stated that he did not want a lawyer, and that the statement Orman made relative to his involvement in the robberies was entirely voluntary on his part. Further, that he had no recollection of Orman's wife being arrested, and, in fact, Orman was permitted to make a phone call to his wife, and she visited him. The officer stated that, though not advising appellant that he could have an attorney, Orman was told that he had a right to remain silent, and that anything he said could be used against him in a court of law. We think the evidence, particularly when we view the inconsistencies in appellant's testimony, preponderates to the effect that he was not mistreated in the North Little Rock jail. *Miranda* v. *Arizona*, 384 U. S. 436, had not been decided at the time, and thus is not pertinent in this case. Likewise, though alleged in the petition, there is no evidence, including his own testimony, that Orman, after being placed in the Pulaski County jail, was mistreated in any respect by the officers.

Charles Scales, Little Rock attorney, testified that Orman, while out on bond, engaged him to secure the return of some money that had been in his possession when he had been arrested. Scales said that he contacted the Prosecuting Attorney, but was told that the state was going to hold the money as evidence in the cases. He testified that at the time Orman appeared before the court for arraignment, appellant was asked if he had a lawyer, and replied, ''Yes, Charles Scales.'' The attorney stated that he was appointed at the time to defend Martin and Carson, and he visited the three of them in jail several times to discuss the charges. From his testimony:

"The best of my recollection is that the matter was set for a jury trial and, lo and behold! then one day I read in the newspaper where Bill Orman had taken 21 years and that was the first time I knew that he intended to come up here and enter a plea of guilty."

The lawyer emphatically denied that he had ever advised appellant to enter such a plea. In fact, it seemed to be the opinion of this witness that there was a good opportunity to have some of the state's evidence held inadmissible. He said that he had planned on defending Orman before the jury.

H. F. Hemphill, Pulaski County jailer, testified that one morning in February, 1964, he was notified that there was a disturbance in one of the cells, and an investigation revealed that a pipe, which had been used as the handle of a water bucket[1] had been used by William B. (Scrappy) Moore in striking Orman. Hemphill testified that Moore said that appellant was bothering "some old man" in the cell with him, and he (Moore) resented it, and after an argument, Moore pulled the handle (pipe) from the wringer, and struck Orman with it.[2]

As heretofore pointed out, we find no merit in the allegations of mistreatment on the part of either the city or county officers, but, relative to the voluntary plea of guilty, which seems to be the principal contention, there is evidence that leaves this particular ques-

---

[1] The witness stated: "Now, each morning a mop and bucket and wringer is put in the cells for the prisoners to clean up their part themselves, and after they have finished the bucket and wringer is removed. On this particular morning, I was called up there to this disturbance and I found that the handle on the wringer of this bucket was loose from the holder, inasmuch as a bolt had been removed or lost out, and this pipe—I believe probably it was a half-inch pipe—which was used as a handle was easily pulled out, and William B. Moore admitted to me that he took the handle off the wringer and struck Mr. Orman."

[2] According to the witness, as punishment, Moore was placed in solitary confinement.

tion in confusion. We refer to the statement of the trial court itself.

"Now I would like to give my recollection about him coming over. Of course, the record shows that on 1-6-64 in those five cases that I mentioned, Orman and Martin and Carson appeared, and the record shows that Orman was represented by Charles Scales, and on that day I appointed Charles Scales to defend Martin and Carson. There was a plea of not guilty entered, passed to the February setting to be reset. Martin went to the State Hospital, but Orman did not. On 2-3-64 Orman's case was set for a jury trial on July 7, 1964. On 2-21-64 Orman sent word to me, or somebody brought word up here, purportedly from Orman, that Orman wanted to change his plea from not guilty to guilty, and I ordered him brought up, and he was brought before the Court, and on that date he changed his plea in all five cases from not guilty to guilty and received 21 years. I remember when Orman came up here that his bad eye was hanging out on his cheek. One of his arms was pretty well "bunged" up. He had been pretty severely beaten. I think I asked him at the time who beat him, and I don't believe he would tell me. Now, I have got a faint recollection of telling him if he would tell me who beat him up that I would have whoever it was indicted for assault to kill. That is my recollection. I may be just wrong about that, but I think I offered to do that, and he wouldn't tell me. There was some discussion that came up about he didn't think he ought to have 21 years, and I told him if he wasn't guilty then not to plead guilty and we would have a jury trial. That's what I tell them all. I told him if he wanted a jury trial that we would have a trial on each count and if the jury convicted him that I would stack[a] them. I told him if he was not guilty that he should not plead guilty. That is what I tell them all. I am sure I told him the same thing. The upshot of it was that he decided he wanted

[a]Meaning that the judgment of the court would direct that the sentences on the several charges, if appellant were found guilty, would run consecutively, rather than concurrently.

'to plead guilty and I gave him 21 years, and I am sure I asked him where his attorney was and why he wasn't present. What he told me, I don't know. I don't know whether he made any explanation of it at all. I don't remember. That is about the best I recall of it. Of course, I didn't send for him. I don't remember the exact words, but I'm sure I asked him where his lawyer was and why he wasn't with him. Do you want to cross-examine me, Mr. Prosecutor or Mr. Dishongh? I will try to make it clearer if I can.''

There are three matters mentioned that, we think, call for a reversal. One, the court commented, ''I remember when Orman came up here that his bad eye was hanging out on his cheek. One of his arms was pretty well 'bunged' up. He had been pretty severely beaten.'' We do not know what is meant by the expression, ''His bad eye was hanging out on his cheek,'' but it does appear that Orman had been severely beaten. Bear in mind that, according to his (Orman's) testimony, the beating, though admittedly not inflicted by the officers, influenced him in deciding to plead guilty. The second matter that relates to the plea is the fact that Lawyer Scales was not present. Though Orman insisted that Scales did not represent him in these cases, Scales testified to the contrary, and the court docket reflected that this attorney did represent Orman.[4] Here, the judge's memory was not clear. ''I am sure I asked him where his attorney was and why he wasn't present. What he told me, I don't know. I don't know whether he made any explanation of it at all. I don't remember.'' Normally, of course, when a man is represented by an attorney, that attorney is present when any action is taken in the case. The most noticeable statement in the court's recitation of the facts as he remembered them is, ''There was some discussion that came up about he didn't think he ought to have 21 years, and I told him that if he wasn't guilty then not to plead guilty and we

---

[4]Certainly, the court considered that Orman was represented by Scales, and we think this representation was established by the evidence at the hearing.

would have a jury trial. That is what I tell them all. I told him if he wanted a jury trial that we would have a trial on each count and if the jury convicted him that I would stack them.'' While, of course, a court should explain to a prisoner, when he is entering a plea of guilty, the nature of the charge, and the penalty that it carries under the statute, no statement should be made that could be construed as influencing the prisoner to enter a plea of guilty. While we do not think the remark was so intended, it could have been interpreted by appellant as a threat. When the three matters herein mentioned, *viz.*, a severely beaten prisoner—without his attorney present—and the statement of the court about "stacking" sentences, are all considered together, we think a question arises as to whether the plea was entered voluntarily. Inasmuch as the judge's testimony relates to this question of fact, and is, as far as the present record is concerned, the most important evidence in the issue here in question (whether the plea of guilty was voluntarily entered), it will be necessary that a different judge conduct a further hearing on remand. That judge then, after hearing the testimony, including that of Judge Kirby, can pass upon the fact questions.

While the court's remarks more or less indicate its findings, we take occasion to call attention to Section (E) of Criminal Procedure Rule No. 1, which, *inter alia*, provides:

"* * * The court shall determine the issues and make written findings of fact and conclusions of law with respect thereto."

This procedure should be followed in all cases heard under Criminal Procedure Rule No. 1.

We would also like to reiterate what was said in *Medley* v. *Stephens, Supt.,* 242 Ark. 215, 412 S. W. 2d 823 (March 27, 1967), which is particularly apropos to the case at hand:

"The Court, very properly, on January 4, 1965, (date of appellant's plea of guilty), had all court pro ceedings relating to the charge against Medley reported by the official court reporter. We think it appropriate to commend the Jefferson Circuit Court for adopting this procedure in receiving pleas of guilty. It will at once be recognized that, in subsequent hearings on petitions for post-conviction relief, after a plea of guilty (wherein allegations are contained that such plea was entered through mistake—or duress—or without being advised of the right to counsel), nothing is left to guesswork. The complete record is available. *There is no need for the judge*[5]—or the prosecuting attorney—nor any other person—*to testify from memory, and we recommend that, where possible, all trial courts, in accepting pleas of guilty, direct that a record be made of all proceedings therein.*"[5A]

For the reasons herein set out, the judgment is reversed, and the cause remanded.