Billy ·Meyers *v.* ·State of Arkansas

5677                                    479 S.W. 2d 238

Opinion delivered April 24, 1972

*Thomas D. Ledbetter,* for appellant.

*Ray Thornton,* Atty. Gen., by *Henry Ginger,* Deputy. Atty. Gen., for appellee.

George Rose Smith, Justice. Upon a negotiated plea of guilty to separate charges of having forged an endorsement upon a check for $942.80 and of having uttered that check, the appellant was sentenced to ten years imprisonment upon each charge, the sentences to run concurrently. Thereafter the appellant filed the present petition for postconviction relief under Criminal Procedure Rule 1. After a hearing at which the appellant testified, the trial court denied the petition. In this court the appellant,

by his court-appointed counsel, urges three points for reversal.

The facts which preceded the present petition are not essentially in dispute. In November, 1970, Meyers, an electrician, was performing work as a subcontractor upon a construction job in Carroll county. He owed AMO Electric Supply Company about $900 for materials purchased by him from that company. Meyers received a check for $942.80 payable jointly to his own company and to AMO. Meyers forged AMO's endorsement upon the check and converted the money to his own use by depositing it in his bank account. That conduct resulted in the charges of forgery and uttering. Meyers does not now contend, and apparently has never contended, that he was innocent of the charges against him. There is nothing in the record to indicate that the State would have had any difficulty in proving its case.

In the original proceeding Meyers was also charged under the habitual criminal statute, as having been convicted of three previous felonies. Those convictions, all of which he admits, were for burglary in Texas, breaking and entering in Missouri, and false pretense in Kansas. Under the habitual criminal statute the penalty for a fourth offense is not less than the maximum punishment for a first conviction for the offense nor more than one and a half times that maximum. Ark. Stat. Ann. § 43-2328 (Supp. 1971). The maximum punishment for forgery and uttering is ten years imprisonment. Ark. Stat. Ann. § 41-1805 (Repl. 1964). Hence Meyers was subject to a term of from ten to fifteen years upon each of the charges.

In the original proceeding Meyers was successively represented by three retained attorneys of his own choice. He discharged his first attorney and then tentatively employed John O. Maberry as his second attorney. Meyers now insists that his constitutional rights were violated by Maberry, in that Maberry wrote a letter to Meyers, sending a copy thereof to the prosecuting at-

torney and to the trial judge, in which the following statements were made:

"I believe your best judgment should compel you to negotiate a guilty plea with the prosecuting Attorney, try to get a recommended 5 to 7 year sentence, have the Missouri and Arkansas charges run concurrently, then take advantage of the State prison's psychiatric treatment. If, after a year and one-half to two years the prison Doctors consider you improved, it is likely you will be eligible for parole or pardon.

"I have studied your rap-sheet and it is very apparent you, for some reason, can't refrain from hot checking anyone whose confidence you gain.

"Your personality compels people to like you and want to help you and you seem to have an uncontrolled desire to take advantage of these persons. You are still young enough to overcome your problems and make a fine citizen, if you will open your mind to assist those who would try to help you."

Thereafter Meyers engaged a third attorney, Paul Jackson, who engaged in plea discussions with the prosecuting attorney. Jackson had hoped to obtain, in return for a plea of guilty, a sentence of from five to seven years and a dismissal of the habitual criminal charges. On the morning of the hearing, however, Jackson explained to Meyers that he had been able to obtain only an agreed recommendation for concurrent ten-year sentences upon each of the two charges, with a dismissal of the habitual criminal charges. Meyers agreed to enter pleas of guilty in accordance with the arrangement negotiated by his attorney.

The matter was submitted to the trial judge as a negotiated plea—subject, of course, to the court's approval. Meyers' rights were fully explainable to him by the trial court before the plea was accepted. In the course of the discussion Meyers' attorney mentioned that there was also a charge (of an undisclosed nature) pending against Meyers in Missouri, the attorney expressing the

hope that Meyers might enter a plea to that charge also and let all the sentences run concurrently. The trial judge accepted the negotiated plea and pronounced sentence in accordance with the parties' recommendation, the habitual criminal charges being dismissed.

Meyers first contends that his second attorney violated his constitutional rights by sending to the trial judge a copy of the letter from which we have quoted and that his third attorney also violated his constitutional rights by mentioning to the judge the pendency of an unspecified charge in Missouri. These contentions are without merit. To begin with, when a criminal case reaches the point at which the accused is to be sentenced, defense counsel is not under any constitutional duty to the accused to conceal facts unfavorable to him. With respect to counsel's duties at that point the American Bar Association's Standards for Criminal Justice make this statement: "He [defense counsel] may not, for example, present facts concerning the defendant's character which would suggest to the judge that the defendant does not have a prior record of crime if he knows that the defendant has such a record and that fact has not been disclosed to the court." Standards Relating to the Prosecution Function and the Defense Function, § 8.1 b, Commentary (1971). That statement is in harmony with the basic premise that the trial judge, in imposing sentence, should have the benefit of all available information about the defendant, both favorable and adverse. Moreover, even if the communications in question had been improper, no prejudice is shown to have resulted from them. The trial judge simply accepted the sentence recommended by the parties. There is nothing whatever to suggest that his decision would have been different if he had not received the communications now complained of.

Secondly, the appellant contends that the trial court erred in imposing the maximum sentence of ten years upon each charge. The court's action, however, must be considered in context. Meyers consistently disregards the vulnerability of his position during the plea negotiations. He was guilty of the offenses charged. The State could be expected to obtain without difficulty a verdict

of guilty. Meyers' record included three previous felony convictions. The minimum sentence that a jury could lawfully impose was ten years upon each charge, with the sentences running concurrently. The maximum was fifteen years upon each charge, with the sentences running consecutively. Obviously Meyers and his counsel were not in a favorable position to bargain for leniency. We have no basis for saying that the court abused its discretion in approving a recommendation under which Meyers received the bedrock minimum penalty that could have been imposed by a jury upon a finding of guilty.

Plea bargaining is an accepted procedure in the administration of the criminal law. *Cross v. State,* 248 Ark. 553, 452 S.W. 2d 854 (1970). In the language of the Standards cited above: "It is appropriate, therefore, to view plea discussions or negotiations as an essential, indeed indispensable, part of the administration of justice. . . Recent studies make it clear. . .that the plea discussions are the norm, not the exception, in the sound administration of criminal law." Standards, *supra,* Part IV, Introductory Note. We have no inclination to set aside the trial judge's action in accepting a plea recommended by the parties when, as here, the negotiations appear to have been fairly conducted.

Thirdly, the appellant argues that his constitutional rights were violated because the postconviction proceeding was presided over by the same judge who imposed the original sentence. Counsel cite no authority for this contention. The point is duscussed in § 1.4 of the Standards Relating to Post-Conviction Remedies (1968). That discussion first points out that the most desirable venue for a postconviction proceeding is in the court in which the challenged conviction and sentence were rendered. The discussion then continues: "Where jurisdiction is vested in the trial courts and venue is determined as in (b) above, neither a general rule favoring nor one disfavoring submission of post-conviction applications to the same trial judge who originally presided is clearly preferable." The Commentary goes on to state: "The same judge brings to the post-conviction proceeding familiarity with the case or the applicant that may make for more efficient handling. The same

judge may be more free in fact to consider or reconsider matters affecting his prior rulings than would a colleague on the bench. On the other hand, there are obvious disadvantages and risks in such a practice. There is a value in seeking determination from a mind not predisposed by prior incidents, and a significant related value that the arbiter appear not to be predisposed."

We have recognized the need for a different presiding judge when the one who originally heard the case is biased or, for want of a record of the first hearing, must appear as a witness. *Elser* v. *State*, 243 Ark. 34, 418 S.W. 2d 389 (1967); *Orman* v. *Bishop*, 243 Ark. 609, 420 S. W. 2d 908 (1967). In the case at hand, however, the petitioner asserts no factual basis for his insistence that the assignment of a new judge is constitutionally mandatory. We find nothing in the record to suggest that Judge Enfield was disqualified from acting upon the postconviction petition. To the contrary, he appears to have treated the petitioner with courtesy and fairness in every particular. The present contention is therefore without merit.

Affirmed.