RICHARD EASLEY *v.* STATE OF ARKANSAS

CR 73-75                                    498 S.W. 2d 664

Opinion delivered September 10, 1973

*C. Joseph Calvin,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *O. H. Hargraves,* Deputy Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. According to appellant's statement of the case, on November 17, 1970, in the Holly Island Community, a few miles from Rector, an automobile occupied by four men was seen entering and leaving the driveways of several homes, and a resident of the community approached the car and, observing sev-

eral items in the back seat, inquired as to their business. After an argument, the men left and the Clay County Sheriff's Office was notified. About ten minutes later, Deputy Sheriff Liddell Jones, who had received the earlier call, received another from a resident of the community stating that several items of property were missing from his home. The Dunklin County Police Department (Kennett, Missouri) was sent a general description of the car, make, model, license number, and number of persons occupying the vehicle, and about thirty minutes later, the police located an automobile fitting the description parked at a grocery store in Kennett, the occupants, including appellant, at the time eating sandwiches. All four were arrested and the car was driven by an officer to the county courthouse. Deputy Jones from Clay County arrived about twenty minutes later, and with a member of the Missouri State Police, conducted a warrantless search of the car. Several items of personal property later established as stolen property were found on the front and back seat, and other items were found in the trunk after a search was made while the car was parked at the courthouse. Thereafter, the Prosecuting Attorney of the Second Circuit in Arkansas charged Richard Easley, appellant herein, with burglary and grand larceny of the property of Birtlee Statler (who had advised Deputy Sheriff Jones of the missing items), unlawful possession of that stolen property, along with grand larceny and unlawful possession of property allegedly belonging to Charles Grimes. A bench warrant was issued and Easley was extradited from the State of Missouri, pleaded not guilty, and was tried before a jury. He was found guilty on all four counts and was sentenced to a term of ten years in the Arkansas State Department of Correction.[1] On September 17, 1972, appellant filed a motion for relief under Criminal Procedure Rule 1, and several amendments were subsequently added. The Clay County Circuit Court, on the basis of the record in the case, denied relief to the petitioner, and from such denial appellant brings this appeal. Seven alleged errors are asserted, though not all are here argued, and it is admitted that some are of doubtful merit.

The principal asserted error is that there was no probable cause to warrant a search of the Easley automobile.

---

[1]A second sentence of ten years was to be suspended upon restitution and good behavior.

Prior to trial, the court heard, in chambers, a motion filed on behalf of appellant to suppress the evidence obtained during the search, and this motion was denied. It is contended by appellant that the court erred in finding that probable cause existed for the search, but even if there was probable cause at that time, the warrantless search of the car at the station was improper and illegal. As to probable cause, the Missouri officers had been notified by Clay County Deputy Sheriff Jones of the burglary, a description of the automobile, including the license number, and information concerning certain items of stolen property. Some of these items were visible in the back seat and back floorboard. Certainly, there was probable cause for believing that the occupants of the car had committed a felony and appellant recognizes that the case of *Carroll* v. *United States*, 267 U.S. 132 stands for the proposition that an officer can search a motor vehicle without a warrant if probable cause exists to believe the vehicle contains that which by law is subject to seizure. Appellant states, however, that if "exigent" circumstances existed at the time of the arrest (while the car was parked at the grocery store), such "exigency" justifying a warrantless search ceased after the men were there arrested and the car driven to the courthouse. Accordingly, the search conducted at the latter location, says appellant, could only have been authorized by obtaining a proper search warrant.

We do not agree. In *Cox* v. *State*, 254 Ark. 1, 491 S.W. 2d 802, decided on March 12 of this year, the facts were similar, and the identical arguments were made. In that case, there was a comprehensive discussion of federal cases relating to search of automobiles and seizure of evidence therein and we pointed out that *Coolidge* v. *New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, a case relied upon by appellant in the present litigation, was not controlling, but rather that the key case was *Chambers* v. *Maroney*, 399 U.S. 42, 26 L. Ed. 2d 419 (1970), and we quoted from *Chambers* as follows:

" 'In terms of the circumstances justifying a warrantless search, the Court has long distinguished between an automobile and a home or office. In *Carroll* v. *United States*, 267 U.S. 132 (1925), the issue was the admissibility in evidence of contraband liquor seized

in a warrantless search of a car on the highway. After surveying the law from the time of the adoption of the Fourth Amendment onward, the Court held that automobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize.' "

The court held that where the police are justified in stopping and searching an automobile as in *Carroll*, they may also seize and search it later at the police station. The court, in *Coolidge* v. *New Hampshire, supra,* did hold as unconstitutional a warrantless police station search of an automobile under circumstances very dissimilar to those in *Chambers,* but pointed out continuing approval of *Chambers* by stating:

"There is no suggestion that, on the night in question, the car was being used for any illegal purpose, and it was regularly parked in the driveway of his house. The opportunity for search was thus hardly 'fleeting.' The objects that the police are assumed to have had probable cause to search for in the car were neither stolen nor contraband nor dangerous. (403 U.S. at 460).

"Since *Carroll* would not have justified a warrantless search of the Pontiac at the time Coolidge was arrested, the later search at the station house was plainly illegal, at least so far as the automobile exception is concerned. *Chambers, supra,* is of no help to the State, since that case held only that, where the police may stop 'and search an automobile under *Carroll,* they may also seize it and search it later at the police station (403 U.S. at 463).

"It is true that the actual search of the automobile in *Chambers* was made at the police station many hours after the car had been stopped on the highway, when the car was no longer movable, any 'exigent circumstances' had passed, and, for all the record shows, there was a magistrate easily available. Nonetheless, the analogy to this case is misleading. The rationale of *Chambers* is that *given* a justified initial intrusion,

there is little difference between a search on the open highway and a later search at the station. Here, we deal with the prior question of *whether* the initial intrusion is justified. For this purpose, it seems abundantly clear that there is a significant constitutional difference between stopping, seizing, and searching a car on the open highway, and entering private property to seize and search an unoccupied, parked vehicle not then being used for any illegal purpose."

In *Chambers,* as mentioned in *Cox* v. *State, supra,* a warrantless search of an automobile was made after the car had been taken to a police station, but the court noted that it could have been searched on the spot where it was stopped since there was probable cause to search, and it was a fleeting target for a search. The court added that the probable cause factor was still in existence at the station house and that in terms of practical consequences, there was little to choose between an immediate search without a warrant, and immobilizing the car until a warrant was obtained. "Given probable cause to search, either course is reasonable under the Fourth Amendment." See also the recent case (January 2, 1973) of *Gomez* v. *Beto,* 471 F. 2d 774, decided by the United States Court of Appeals for the Fifth Circuit. Appellant's argument is without merit.[2]

Point II is covered by our previous discussion.

Point III sets out that the petitioner was arrested without a warrant and was not advised of his rights, but that point is not argued. We have already made clear that the arrest was justified without a warrant and the testimony reflects that appellant was advised of his rights.

Point IV refers to Easley's allegation in his petition "That petitioner's attorney did not defend his client to the fullness of his ability" and "petitioner's attorney did in fact state that he wouldn't go any further for lack of money." Before discussing this point, it might be stated that it appears that Easley did not actually desire a new hearing before the trial court. On November 2, 1972, appellant addressed a letter to the circuit judge, complying with the court's request that he be more spe-

[2]There was also testimony that Easley consented to the search of the automobile.

cific in his allegations of inadequate representation by counsel. Easley closed the letter by saying:

> "Petitioner asked the court that in view of the fact that Petitioners Constitutional Rights have been violated that the court act on Petitioners original motion on amendments to that motion. Petitioner asked that if the court can not make a decision *on evidence already given* [our emphasis] that the court allow Petitioner to move his (Petitioners) motion on to the higher courts in the Arkansas State Supreme Courts."

Easley had two retained attorneys and upon the trial court's direction to be more specific asserted that on the day of trial one of these attorneys was sick and unable to attend and he (Easley) asked the other attorney to endeavor to get the case postponed. This was not done and Easley also asserted that the attorney who was ill had other witnesses to present to the court. Of course, the allegation that the attorney stated he "wouldn't go any further for lack of money" is rather puzzling since appellant was represented by this retained attorney throughout the trial, and the statement apparently has reference to an appeal to this court, since the appeal on the denial of relief under the Rule 1 Petition was brought to this court by appointed counsel. Of course, the names of other witnesses could have been furnished to counsel by appellant himself, and there is no allegation that the names of witnesses were given to counsel trying the case, and the attorney refused to call them. Frequently, attorneys do not call all the witnesses whose names they have, either because they do not feel the testimony would add anything to the defense, or because they think the witnesses would make a bad impression. Let it be remembered that this is no attack upon court-appointed counsel, but an attack upon Easley's own retained counsel, who incidentally has practiced law in that area for many years. It has been frequently said that "Effective assistance does not equate with success." See *Mitchell* v. *Stephens*, 353 F. 2d 129, and cases cited therein. The evidence against Easley, as shown by testimony in the hearing to suppress, was rather overwhelming, and the failure to obtain an acquittal certainly does not denote incompetence. In *Poole* v. *United States of America*, 438 F. 2d 325 (1971), Poole appealed from an order denying without hearing

his motion to vacate sentence. It was alleged that he was denied the Sixth Amendment right for assistance to counsel in that his court-appointed counsel failed to subpoena one Richard Curtis Apgar, also a co-defendant, to testify and it was asserted that the district court erred in denying him a full evidentiary hearing. The United States Court of Appeals, Eighth Circuit, in an opinion by Chief District Judge McManus, held the contention to be without merit though Apgar had signed an affidavit supporting Poole's allegation that he (Poole) had been forced by Apgar to commit the robbery. The court stated:

> "There is a presumption of the competency of court appointed counsel. *Slawek* v. *United States,* 413 F. 2d 957 (8th Cir. 1969). A charge of inadequate representation can prevail 'only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking to the conscience of the Court. *Hanger* v. *United States,* 428 F. 2d 746, 748 (8th Cir. 1970).'

> "The calling or not calling of witnesses is a matter normally within the realm of the judgment of counsel. [Citing cases]. We hold that the requirement of the Sixth Amendment has been met here since Appellant's counsel's judgment not to call Richard Curtis Apgar neither made a mockery of justice, nor shocks the conscience of the Court.

> "The District Court did not err in denying the Appellant a full and fair evidentiary hearing since we feel that an 'examination of the motion and the records and files of the case conclusively shows a hearing would serve no useful purpose.' *Cardarella* v. *United States,* 375 F. 2d 222, 230 (8th Cir. 1967).

> 'If a movant under Section 2255 makes no allegations of ineffectiveness or incompetence of counsel, save in matters normally within the realm of counsel's judgment, he is not entitled to a hearing. *Mitchell, supra,* 259 F. 2d at 794.' "

Previous discussion has covered Point V, though the point is simply stated, and no argument advanced.

Point VI asserts that the "commitment papers are not in order", but the point is not argued and the sentence appears to be in accord with the verdict.

Finally, is it asserted that the petition should have been passed upon by a different judge rather than the same judge who presided at the trial; that this was "inherently prejudicial and a denial of due process of law". Appellant recognizes that we have held this contention to be without merit, but insists that we should reconsider that ruling. In *Meyers* v. *State,* 252 Ark. 367, 479 S.W. 2d 238 (1972), we said:

> "We have recognized the need for a different presiding judge when the one who originally heard the case is biased or, for want of a record of the first hearing, must appear as a witness. *Elser* v. *State,* 243 Ark. 34, 418 S.W. 2d 389 (1967); *Orman* v. *Bishop,* 243 Ark. 609, 420 S.W. 2d 908 (1967). In the case at hand, however, the petitioner asserts no factual basis for his insistence that the assignment of a new judge is constitutionally mandatory. We find nothing in the record to suggest that Judge Enfield was disqualified from acting upon the postconviction petition. To the contrary, he appears to have treated the petitioner with courtesy and fairness in every particular. The present contention is therefore without merit."

There is no suggestion of prejudice in the petition filed by appellant, nor is there any indication from the record that such prejudice existed. We hold the allegation to be without merit.

Affirmed.

FOGLEMAN, J., not participating.