James C. YOUNG *v.* STATE of Arkansas

CA CR 84-111                    685 S.W.2d 823

Court of Appeals of Arkansas
Division II
Opinion delivered March 13, 1985
[Rehearing denied April 3, 1985.]

*Timothy O. Dudley,* for appellant.

*Steve Clark,* Att'y Gen., by: *Velda P. West,* Asst. Att'y Gen., for appellee.

GEORGE K. CRACRAFT, Chief Justice. James C. Young appeals from his conviction of the crime of rape for which he was sentenced to fourteen years imprisonment to run consecutive to a sentence for a similar offense he was already serving. The appellant contends that the trial court erred in refusing to dismiss the charge against him because of prejudicial preindictment delay in bringing the charge, that he was charged and convicted under an ex post facto law, and that he had not voluntariy waived his right to counsel. We find no merit in any of these contentions and affirm the conviction.

On the night of June 3, 1979 a young female reported to the Pine Bluff police that she had been raped after leaving the Yesterday Club. She was interviewed by a police officer at the Pine Bluff Hospital that night. She had obviously been beaten, was scared and refused to name her attacker because, she stated, he had threatened to kill her or her child if she did. The following day she was interviewed by another officer and though she described the incident she still would not name her attacker. He stated that she was nervous and scared and did not wish to pursue the matter or press charges. Both officers testified that she appeared to know the name of the rapist but was afraid to tell them his name. Either that same day or shortly thereafter the roommate of the victim informed the police that the victim had told her of the rape and that the appellant was her attacker. The victim's boyfriend stated that she told him that appellant was her attacker the day after the rape. He said he encouraged her to go to the police but she was too afraid. Four months later a detective again interviewed the victim and she still refused to name him or press charges for fear of reprisal. The officers testified that for lack of information and desire to prosecute the investigation was closed.

On November 11, 1982 the appellant was arrested and charged with the rape of another young woman who had left

the Yesterday Club. When it was discovered that appellant was a suspect in the earlier rape his first victim was again interviewed and finally named him as her attacker. The appellant was promptly charged and jailed for the earlier offense. A jury found him guilty of the charge on evidence which sufficiently supports the verdict.

Prior to trial the appellant filed a motion to dismiss the charge alleging that the preindictment delay of almost three and one-half years denied him due process. Although he alleged that the delay was prejudicial he did not allege in what manner he had been prejudiced. At a hearing on that motion the State offered the explanation that it had not acted sooner because of the victim's refusal to press charges or testify. The appellant argued only that it was unfair to bring him to trial at this date.

At the time this crime was committed rape was classified as a class A felony for which the statute of limitation was six years. Under ordinary circumstances the charge against this appellant could have been brought at any time within that period. In *United States* v. *Marion,* 404 U.S. 307 (1971) and *United States* v. *Lovasco,* 431 U.S. 783 (1977) the Supreme Court of the United States recognized that a statute of limitation defines only the outer limits of prosecution beyond which there would be an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced, but that within these limits the due process clause still has a limited role to play in protecting against oppressive delay which prejudices the defendant's rights. These two decisions make it clear that where an indictment is returned within the period of limitations due process considerations do not arise until prejudice to the defense resulting from delay is alleged and demonstrated and it appears that the government intentionally delayed the indictment to gain some technical advantage over the appellee. In *Lovasco* the court stated:

> Thus *Marion* makes clear that proof of prejudice is generally a necessary but not sufficient element of the due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused. . . . It requires no extended

argument to establish that prosecutors do not deviate from fundamental conceptions of justice when they defer seeking indictments until they have probable cause to believe an accused is guilty; indeed it is unprofessional conduct for prosecutor to recommend an indictment on less than probable cause. It should be equally obvious that prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt.

These rules have been adopted and applied by our courts in *Scott v. State,* 263 Ark. 669, 566 S.W.2d 737 (1978) and *Bliss and Bliss v. State,* 282 Ark. 315, 668 S.W.2d 936 (1984). In *Scott* there was a three year delay between the crime and the date on which charges were filed. It was shown to the court that the delay prevented the accused from using two alibi witnesses, one whose whereabouts were not known and the other who had died a year and a half after the killing. It was stipulated that if the two witnesses were present they would testify to the alibi. The State did not respond to the motion and it was not shown why the delay had occurred or that the State had good cause for it. The court there held:

> The prosecution cannot delay simply for the purpose of gaining a tactical advantage over the accused. The United States Supreme Court has noted that there may be circumstances where prejudice occurs from prosecutorial delay which require the dismissal of charges. *United States v. Lovasco,* 431 U.S. 783, 79 S.Ct. 2004, 52 L.Ed.2d 752 (1977), reh. den. 434 U.S. 81. Since Scott was able to show the prejudice to his defense, unless the state can come forward with a satisfactory reason for the delay, the charges should be dismissed.

The *Scott* case was remanded to trial court with directions that unless the state showed that the reason for the delay was other than to gain a tactical advantage against the accused, the charges should be dismissed.

In *Bliss* the delay was even longer. There the children were removed from the custody of a natural parent in 1978 by

juvenile authorities on allegation of sexual abuse by the mother and stepfather. They were not charged with the rape of the minor child until 1983. The court there held that although the delay was unusually long he could not say that the prosecution intentionally delayed in order to gain a tactical advantage over the appellant and therefore found no prejudicial error in failing to bring the charges against the appellants at an earlier date. We are unable to determine from the factual recitation in *Bliss* all of the reasons for that finding. It does appear, however, that a prosecuting witness in the juvenile hearings in 1978 disappeared shortly after that hearing and the victim, who was eight years old at the time of the offense unequivocally denied the allegations made against his parents and refused to testify against them at that time.

It is clear from these cases that mere preindictment delay is not a sufficient ground for aborting a criminal prosecution within the period of limitation. The accused has the burden of first showing prejudice resulting from the loss of witnesses or physical evidence or the dimming of the witnesses' memory and how that loss is prejudical to him. The burden is then on the government to give a satisfactory reason for the delay. The courts grant the government considerable leeway in its timing of the arrest and indictment, and only the prejudice resulting from unreasonable delays, improper purposes or as a result of governmental negligence is deemed to be a denial of due process. Accommodating the administration of justice and the accused's right to a fair trial necessarily involves a delicate balancing of the reason for delay against the resulting prejudice based on the circumstances of each case. *Marion* v. *United States, supra; United States* v. *Mays,* 549 F.2d 670 (1977).

At the pretrial hearing on the motion to dismiss the appellant neither alleged prejudice nor testified to any facts which might have established it. He simply asserted that it was not fair to force him to trial. The State explained that the matter had not been pursued because of the refusal of the victim to identify the rapist and to press charges. It was not until the second rape when she was assured by the police

officers that she would be fully protected that she agreed to testify.

It was pointed out in *Lovasco* that the State is under no duty to file charges as soon as probable cause exists without being satisfied that it will be able to establish guilt beyond a reasonable doubt. It is not unusual for a young female who has been raped not to report it, or having reported it, to refuse to go through the ordeal of prosecution and risk a threat of retaliation. Except in those rare cases where there is an eyewitness it is impossible to prove a charge of rape without the testimony of the victim. To require the State to charge a person with a felony which must be proved beyond a reasonable doubt without reliable witness would be an exercise in futility. Although the delay here was unusually long we cannot say that the prosecution delayed in order to gain tactical advantage over the appellant or created a prejudicial error in failing to bring the charges against the appellant at an earlier date.

Even though he did not allege or offer to show prejudice at the hearing on the motion to dismiss he argues on appeal that he was prejudiced because there was evidence at the trial that a guest record kept at the Bogart Club had been routinely destroyed during the interim and its existence might have strengthened his defense of alibi by showing that he had not attended that club on the night in question. He also makes the novel argument that the fact that he had been convicted of a ssecond rape in the interim made it impossible for him to testify in his own behalf. Although we do not address issues raised for the first time on appeal, these arguments would in no wise affect our decision in view of our conclusion that the State has satisfactorily explained the delay to be not unreasonable.

Next appellant contends he was charged and convicted under an ex post facto law. In 1979 when this crime was committed, rape was classified as a class A felony punishable by imprisonment for not less than five years nor more than fifty years, or life. Ark. Stat. Ann. §§ 41-1803 and 41-901 (Repl. 1977). In 1981 these sections were amended to classify the crime of rape as a class Y felony for which the sentence

should be not less than ten nor more than forty years, or life. Ark. Stat. Ann. §§ 41-1803 and 41-901 (Supp. 1983). Appellant was arrested and charged after the effective date of the 1981 amendments. The information stated that the crime of rape was a class Y felony and was never amended.

We agree with the appellant that the reclassification of rape to a class Y felony was a substantive change in the law and that those charged with rape after the effective date of the amendment should be tried under the substantive law in effect when the crime was committed. *Smith* v. *State*, 277 Ark. 64, 639 S.W.2d 348 (1982).

We do not agree, however, that appellant has demonstrated any prejudicial error warranting a reversal of his fourteen year sentence. Although he did file a pretrial motion to dismiss, pointing out that he could only be charged with a class A felony, the record does not disclose that this motion was ever presented or ruled on by the court. It is incumbent on the moving party to obtain a ruling on his motion in order to preserve it on appeal. *Wood* v. *State*, 276 Ark. 346, 635 S.W.2d 224 (1982). Nor has appellant favored us with an abstract of the instructions given the jury. We do not know from the abstract what the jury was instructed on punishment or, if they were erroneously instructed, whether a proper objection was made. Arguments for reversal will not be considered for the first time on appeal where the basis for the argument is not abstracted or it is not shown that an appropriate objection was made in the trial court. *Wicks* v. *State*, 270 Ark. 781, 606 S.W.2d 366 (1980). The record discloses that appellant did not object to the sentence when imposed. Issues involving sentencing will not be considered for the first time on appeal. *Jackson* v. *State*, 266 Ark. 754, 585 S.W.2d 367 (Ark. App. 1979). These rules have been applied even when the issue is a constitutional one. *Griggs* v. *State*, 280 Ark. 339, 658 S.W.2d 371 (1983). One who elects to represent himself is bound by the rules of procedure. *Gilbert* v. *State*, 282 Ark. 504, 669 S.W.2d 454 (1984).

At appellant's request his appointed counsel was relieved and he went to trial *pro se*. He contends that he did not voluntarily waive his right to counsel and was therefore

denied his constitutional right to be represented by counsel at his trial. We find no merit to his contention.

The case was originally set for trial on July 19, 1983. On July 15 the appellant filed a handwritten motion alleging that his appointed counsel had neglected his duties and asking that he be relieved and another counsel appointed. On July 18 the trial court heard the motion and appellant testified that he had not filed his motion sooner because he had been requesting his counsel to visit him and that he had the names of witnesses to support his alibi but could not get his counsel to subpoena them. Appellant admitted that he had known of the witnesses for several months but had not notified his counsel by mail of his desire to have them subpoenaed because he wanted to tell him in person. It was his feeling that his appointed counsel was not adequately preparing his defense.

Counsel stated to the court that after his appointment he had talked to the appellant in jail on at least four, or more, occasions. He stated that the only information the appellant had furnished was that there might be a guest register at the Yesterday Club which would tend to show whether appellant was there on June 3rd. Counsel said that for several weeks he had attempted to talk with the manager of the club but had been informed that he was out of town. He had therefore arranged for a subpoena *duces tecum* to be served upon the manager or his son. The victim had testified that she first met the appellant at another club known as Bogart's. Counsel had contacted the manager of that club and had been informed that if there was a guest register for June 1979 he could not locate it. Counsel stated he had obtained the State's file and had furnished the appellant with copies of everything in it including statements of the officers and of the victim. He stated that on several occasions he had conferred with appellant's mother and sister both about the pending case and an earlier one that he was handling on appeal. He stated that during the previous week he had visited with the appellant in the jail and was advised that his services were no longer required. He had never at any time been informed that the appellant had other witnesses or desired subpoenas to be issued.

The trial court denied the motion and informed the appellant that he could either accept his court appointed attorney, retain his own counsel, or go to trial *pro se,* and if he elected to act as his own counsel the court would continue the case to give him the opportunity to furnish to the court the names of those persons for whom he wished subpoenas. The appellant stated his election to represent himself and the court continued the case until a later date. At that time the appellant informed the court that his mother and sister were seeking to obtain retained counsel for him.

Appellant concedes that an accused person is entitled only to competent counsel and not counsel of his own choosing. *Urquhart* v. *State,* 275 Ark. 486, 631 S.W.2d 304 (1982); *Caldwell* v. *State,* 245 Ark. 12, 431 S.W.2d 456 (1968). He also concedes that an accused may voluntarily and intelligently waive the right to counsel and choose to represent himself. He argues that his waiver of right to counsel was not voluntarily and intelligently made because he was given the choice of receiving ineffective assistance of counsel or proceeding *pro se.* We agree that the constitutionally guaranteed right to counsel requires effective assistance of counsel. *Franklin & Reid* v. *State,* 251 Ark. 223, 471 S.W.2d 760 (1971). We do not agree, however, that the trial court erred in finding that appellant's court appointed counsel was competent and had not been negligent in his preparation of the defense.

There is a presumption that court appointed counsel is competent. *Easley* v. *State,* 255 Ark. 25, 498 S.W.2d 664 (1973); *Cotton* v. *State,* 265 Ark. 375, 578 S.W.2d 235 (1979). The evidence in the record does not sustain a finding that the presumption was overcome. The appellant testified that his counsel "was not trying to help me." Counsel stated that he had made an investigation of the crime, obtained and furnished the appellant copies of the prosecution's file and had sought to interview and issue subpoenas for those possible witnesses made known to him by the appellant. The appellant admitted that he had not informed his counsel of the names or expected testimony of any of the alibi witnesses who ultimately testified at the trial. Appellant's principal complaint seems to be that counsel did not

visit him in prison as often as he felt he should. Appellant did not furnish information regarding his defense to his counsel by mail, but insisted that it be done in person. It would appear that the failure of preparation was attributable more to the failure of appellant to assist his counsel than to inattentiveness of his counsel.

Appellant argues that the counsel failed to properly investigate the incident. The testimony indicates that he had obtained all of the information that the prosecution had and pursued all additional information furnished him by the appellant. He also argues that the representation was ineffective because the appointed counsel had not filed pretrial motions, in particular a motion to dismiss because of a prejudicial preindictment delay and because he was charged under an ex post facto law. We have already found those motions to be without merit and in view of that finding are unwilling to say that failure to raise them was evidence of incompetence.

Affirmed.

GLAZE and CORBIN, JJ., agree.