Paul Anthony MOORE *v.* STATE of Arkansas

CA CR 03-1387                                    192 S.W.3d 271

Court of Appeals of Arkansas
Division III
Opinion delivered September 22, 2004

[Rehearing denied October 27, 2004.]

388

*Montgomery, Adams & Wyatt, PLC,* by: *Dale E. Adams,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Brent P. Gasper,* Ass't Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. Appellant Paul Moore was convicted of four counts of rape and was sentenced to thirty years' imprisonment on each count, to be served concurrently. On appeal, Moore argues that the trial court erred in (1) denying his motion to dismiss for lack of speedy trial based upon pre-arrest delay; (2) permitting the State to introduce character evidence in violation of Arkansas Rule of Evidence 404(b); and (3) denying his motions for a mistrial. We affirm.

Because Moore does not challenge the sufficiency of the evidence supporting his conviction, only a brief recitation of the relevant facts is necessary. In June 1999, an arrest warrant was issued for Moore. The issuance of the warrant stemmed from the Little Rock Police Department's investigation of allegations that in November 1998, a man driving a red-orange Chevrolet pickup truck had followed Megan Welsh and her siblings home and attempted to enter her bedroom window; that in December 1998, two victims, J.S. and K.H., had reported that a man forcibly entered J.S.'s home, placed duct tape on the girls, undressed them,

and forced them at gunpoint to perform sexual acts on each other and then on him; that in December 1998, the Welshes saw the same pickup truck that had followed Megan, and wrote down its license-plate number and reported the information to the police; and that when presented with a photo spread the victims and witnesses all identified Moore as the perpetrator. Moore was not arrested until November 2001, and the criminal information charging him with four counts of rape was not filed until January 8, 2002. The delay was caused by the Little Rock Police Department's failure to enter the 1998 warrant in the ACIC system.

At the pretrial hearing, Moore moved to dismiss the case, arguing that his right to a speedy trial under the Sixth Amendment of the Constitution had been violated because of the more than two-year delay between the issuance of the arrest warrant and his actual arrest. During his argument, Moore cited *Doggett v. United States*, 505 U.S. 647 (1992), and *Barker v. Wingo*, 407 U.S. 514 (1972). The State responded that while the period between the issuance of the warrant and Moore's arrest was two years and five months, Moore was brought to trial within one year of his arrest. The State also argued that the statute of limitations permits the State to commence prosecution for rape, a class Y felony, within six years of the alleged occurrence. The trial court denied Moore's motion to dismiss, finding that the delay in Moore's arrest was not a speedy trial issue and further finding that the statute of limitations did not bar prosecution of this case.

At trial, the State presented testimony regarding the investigation of the two cases. James Sloan, a detective with the Little Rock Police Department, testified that on December 7, they did a walk-through at J.S.'s home and found duct tape in a garbage can outside. The following colloquy occurred next:

> STATE: And were you able to develop a suspect in this case?
>
> A: Yes, eventually we did.
>
> STATE: And who was that person?
>
> A: Mr. Anthony Moore, Paul Anthony Moore.
>
> STATE: Okay. And did you have any other names that you —

DEFENSE: Your Honor I'm going to —

STATE CONTINUING: — understood to be associated with him?

DEFENSE: — object

COURT: Sustained.

STATE: Well, can I ask if they were any —

DEFENSE: May we approach?

<Outside of the jury's hearing>

COURT: Aliases?

At this point, defense counsel moved for a mistrial, arguing that the State was asking for additional names. The court sustained the objection, but denied the motion for mistrial. But, the court indicated, "I don't know about the prejudice; so, let's stay away from that [the aliases]."

Sloan continued his testimony, explaining that based on the license plate information provided by the Welshes, more information was discovered. The following colloquy occurred:

STATE: All right. And, based on that information, what did you do?

A: Based on that information, a vehicle description was given. I ran that vehicle description through our system and came up — based on the license plate information, it came back to the suspect. At that point, I made contact with the Department of Revenue and also Pulaski County Jail and was sent a picture of the suspect.

Moore's counsel again moved for a mistrial, arguing that the witness's testimony that he contacted the Pulaski County jail to obtain a picture of Moore suggested that Moore had a criminal record. Defense counsel also reminded the court that the State had previously raised the issue of aliases and argued that the additional reference to the county jail created the implication that Moore had a criminal record. The court stated that there was no clear

implication that the witness had obtained the picture from the jail because he also mentioned contacting the Department of Finance and Administration. The trial court denied the motion, instructing the State to advise its witness not to mention the Pulaski County jail. Sloan then testified that he had contacted the Department of Finance and Administration and that he had been able to obtain a photograph of Moore.

Sloan also testified that he showed the photo spread to Barbara Welsh, Richard McKinnie, Megan Welsh, K.H., and J.S., and they all identified Moore as the perpetrator. Following Sloan's testimony, the State presented evidence showing that a 1975 red and white Chevrolet pick-up truck with license plate number "208CTS" was registered to Paul Moore, in November 1998.

At the conclusion of the State's case and at the conclusion of all of the evidence, the defense renewed its motion for mistrial, requested that the trial court consider the cumulative effect of the errors, and challenged the sufficiency of the evidence. The motions were denied.

On appeal, Moore first argues that the trial court erred in denying his motion to dismiss based upon the Sixth Amendment right to speedy trial. In his brief Moore states, "The issue raised in this case but not addressed by any Arkansas case . . . is whether one's right to a speedy trial under the Sixth Amendment accrues with the issuance of an arrest warrant." Moore requests that this court find that the trial court erred when it held that his Sixth Amendment right to a speedy trial had not been violated and that this court reverse and dismiss his case pursuant to *Doggett v. United States, supra.*

In *United States v. Marion*, 404 U.S. 307 (1971), the Supreme Court considered whether a three-year delay between the alleged criminal act and the filing of the indictment required dismissal of the defendants' case. The appellees moved to dismiss their case for violation of their due process rights and speedy trial rights under the Fifth and Sixth Amendments. The Supreme Court stated, "In our view, however, the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused,' an event that occurred in this case only when the appellees were indicted." *Id.* at 313. The Court further observed that the Sixth Amendment was not intended to cover "pre-accusation" delay. *Id.* at 315. Thus, it is either a formal indictment or information or an actual restraint that triggers the

protections of the Sixth Amendment. The Court "decline[d] to extend the reach of the amendment to the period prior to the arrest." *Id.* at 329.

Ten years later in *United States v. MacDonald*, 456 U.S. 1 (1982), the Supreme Court again addressed the difference between the Sixth Amendment right to speedy trial and the Fifth Amendment due process right that may be violated by pre-indictment delay. The appellee had alleged that a two-year delay between the submission of the investigation for murder to the Justice Department and a federal indictment charging him with murder violated his Sixth Amendment right to a speedy trial.

█ Citing *Marion, supra*, the Court reiterated that the Speedy Trial Clause of the Sixth Amendment does not apply to the period before a defendant is indicted, arrested, or otherwise officially accused. "Although delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment . . . or to a claim under any applicable statute of limitation, no Sixth Amendment Right to a speedy trial arises until charges are pending." *Id.* at 7. (Citations omitted.) Pre-arrest delay must be scrutinized under the Due Process Clause.

Notwithstanding the Supreme Court precedent excluding pre-indictment delay from Sixth Amendment Speedy Trial analysis, Moore relies on *Doggett v. United States*, 505 U.S. 647 (1992), for the proposition that the Sixth Amendment now encompasses pre-arrest delay. In *Doggett, supra*, the appellant was not arrested until 8 1/2 years after his indictment, due to the government's negligence. In analyzing the case, the Supreme Court concluded, "that the Sixth Amendment right of the accused to a speedy trial has no application beyond the confines of a formal criminal prosecution. Once triggered by arrest, indictment, or other official accusation, however, the speedy trial enquiry must weigh the effect of delay on the accused's defense just as it has to weigh any other form of prejudice." *Id.* at 655.

█ Clearly, there is not a Sixth Amendment speedy-trial right due to pre-indictment or pre-arrest delay. Moore relies heavily on *Doggett, supra*, in which the appellant had been indicted but not arrested; however, in this instance Moore had not been arrested or indicted. In *Marion, supra;* and *MacDonald, supra*, the Supreme Court made it clear that pre-indictment delay arguments are more appropriately analyzed under a Fifth-Amendment Due Process argument, and expressly declined to extend the reach of

the Sixth Amendment to the period prior to arrest. The Court specifically held that the Sixth Amendment does not cover pre-accusation delay, which includes pre-indictment and pre-arrest delay. *See Marion, supra.* Thus, Moore's argument must fail under a federal constitution analysis.

■ Turning to Arkansas case law, we likewise have not recognized a Sixth Amendment speedy trial right for pre-accusation delays. In *Young v. State,* 14 Ark. App. 122, 685 S.W.2d 823 (1985), and *Forgy v. State,* 16 Ark. App. 76, 697 S.W.2d 126 (1985), this court analyzed claims of pre-indictment and pre-arrest delay under the due process clause. *Forgy, supra,* cites *Marion, supra,* and holds that a due process violation resulting from pre-arrest delay does not arise until the defendant can demonstrate prejudice. In *Young, supra,* the court discussed the burdens in a due process analysis based on pre-indictment delay.

■ The *Young* court also discussed the statute of limitations as it relates to the analyses of pre-indictment and pre-arrest delay. In *Young, supra,* the defendant was accused of rape, a class Y felony, for which the statute of limitations is six years. *See also* Ark. Code Ann. § 5-14-103 (Repl. 1997); Ark. Code Ann. § 5-1-109 (Repl. 1997). The court stated, "It is clear from [the] cases that mere pre-indictment delay is not a sufficient ground for aborting a criminal prosecution within the period of limitation. The accused has the burden of first showing prejudice." *Young,* 14 Ark. App. at 127, 685 S.W.2d at 826.

■ More recently, in *Jones v. State,* 347 Ark. 455, 65 S.W.3d 402 (2002), the Arkansas Supreme Court held, "The Constitutional right to a speedy trial is violated only by vexatious, capricious, and oppressive delays manufactured by the ministers of justice." *Id.* at 463, 65 S.W.3d at 407. Quoting *MacDonald, supra,* the court wrote, "Although a delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment, or to a claim under any applicable statute of limitation, no Sixth Amendment right to a speedy trial arises until charges are pending." *Id.* at 462, 65 S.W.3d at 407.

■ In this regard, Moore has asserted his claim of error only under the Sixth Amendment. Moore has made no Fifth Amendment argument, and we cannot consider arguments not raised below or specifically argued on appeal. *Howard v. State,* 348 Ark. 471, 79 S.W.3d 346 (2002).

█    Further, Moore was charged with rape, which carries a six-year statute of limitation. As the trial court observed, the charge was brought within the limitation period. The State commenced prosecution within six years of the alleged offense. Accordingly, the trial court properly denied Moore's pre-trial motion to dismiss. *Young, supra*; *Jones, supra*; Ark. Code Ann. § 5-1-109 (Repl. 1997); Ark. Code Ann. § 5-14-103 (Repl. 1997).

█    Moore next argues that the trial court erred in denying his two motions for mistrial. Moore couches his argument in terms of Ark. R. Evid. 404(b) character evidence; however, he in essence argues that the trial court erred in failing to grant his motions for mistrial when the State made reference to his aliases and when its witness intimated that he obtained a picture of Moore from the Pulaski County jail. Moore did not object below based on Rule 404(b) character evidence, and we cannot consider this aspect of his argument for the first time on appeal. *Howard, supra.*

█    In regard to the denial of the motions for mistrial, it is well-settled that a mistrial is a drastic remedy, which should only be used where there has been an error so prejudicial that justice cannot be served by continuing the trial or when the fundamental fairness of the trial itself has been manifestly affected. *Barr v. State*, 336 Ark. 220, 984 S.W.2d 792 (1999). The trial court is in the best position to decide the issue of prejudice because of its first-hand observation. *Id*. The trial court has wide discretion in granting or denying a motion for a mistrial, and absent an abuse of that discretion, the trial court's decision to deny a motion for a mistrial will not be disturbed. *Id*. Even assuming that the prosecutor made inappropriate comments, when the evidence of guilt is overwhelming and the error is slight, we can declare that the error was harmless and affirm. *Id*. Lastly, an admonition has been held sufficient to cure improper statements made during a witness's testimony. *Smith v. State*, 351 Ark. 468, 95 S.W.3d 801 (2003). But, it is the defendant's obligation to request a curing instruction, and a failure to request one will not inure to the defendant's benefit on appeal. *Id*.

█    We cannot say that the trial court abused its discretion in denying Moore's motions for mistrial. Regarding the inquiry about aliases, the trial court denied Moore's motion, but instructed the State to stay away from that line of questioning. Consequently, because there was no testimony about any alleged aliases, Moore

cannot demonstrate prejudice. Further, Detective Sloan's testimony that he obtained Moore's picture from the Department of Finance and Administration cleared up any inference that it might have been obtained from the county jail. Even assuming that the jury understood Sloan's testimony as suggesting that he attempted to obtain a photo of Moore from the jail, such testimony would not necessarily indicate that Moore had a prior criminal conviction. More importantly, Moore never asked for an admonition. Finally, in light of the testimony regarding the rape of J.S. and K.H., the incident involving Megan Welsh, the vehicle and license-plate information, the presence of duct tape in J.S.'s garbage can, and the unequivocal identification by the victims and other witnesses of Moore as the perpetrator, the error, if any, would be only slight. *Barr, supra.*

Moore also argues that a mistrial was warranted due to cumulative errors throughout the trial. An argument of cumulative error is entertained in only rare and egregious cases. *Childress v. State*, 322 Ark. 127 (1995) (citing *Alexander v. Chapman*, 289 Ark. 238, 711 S.W.2d 765 (1986) (where there were twenty-eight objections and repeated admonitions, but the appellee's conduct did not stop)). Here, the two instances complained of would hardly constitute egregious conduct even if error had occurred. No testimony about Moore's aliases was ever presented, and the testimony regarding the source of Moore's photo made it clear that the photo was obtained from the Department of Finance and Administration. Accordingly, the argument based upon cumulative error is without merit.

Affirmed.

BIRD and CRABTREE, JJ., agree.