Charles Franklin **DEES**, Movant-Appellant,

v.

**STATE of Missouri, Defendant-Respondent.**

**No. 9306.**

Missouri Court of Appeals,
Springfield District.

March 15, 1973.

James R. Reynolds, Ford, Ford, & Crow, Kennett, for movant appellant.

John C. Danforth, Atty. Gen., Charles B. Blackmar, Special Asst. Atty. Gen., Jefferson City, for defendant respondent.

HOGAN, Judge.

On June 2, 1971, Charles Franklin Dees and a companion entered a rural service station, subdued an employee with an empty pop bottle, and stole the cash register. The two then broke the cash register by dropping it on the driveway outside, and took the contents. The State contended that the cash register contained $173.52, but, according to Mr. Dees, "there wasn't no $173.00, [only] $158.00." Mr. Dees, to whom we shall refer as the defendant, was subsequently charged with robbery in the first degree, as defined and denounced by § 560.120, RSMo 1969, V.A.M.S.,[1] pleaded guilty to that offense, and received a sentence of 12 years imprisonment. Thereafter defendant filed a motion to vacate and set aside the judgment of conviction and sentence pursuant to Rules 27.25 and 27.26, V.A.M.R., which was denied after an evidentiary hearing. He now appeals from the order denying that motion. We review those matters properly briefed. McQueen v. State, 475 S.W.2d 111, 115 (Mo. banc 1971).

The defendant's single point, presented in several aspects, is that his guilty plea was not voluntarily and knowingly entered, because: 1) he did not have the effective assistance of counsel, and 2) he entered his plea upon the assurance of counsel that he would receive only a five year sentence, that assurance having been based upon counsel's belief that he had entered into a plea bargain with the Prosecuting Attorney, and 3) the trial court, at the time of sentencing, should have afforded the defendant an opportunity to withdraw his guilty plea if he wished.

At the hearing on the motion, it was shown that after the defendant was charged, his parents employed Mr. John C. Watkins to represent him. Mr. Watkins testified that he lived at Paragould, Arkansas, where he had practiced law since 1951. When he was employed, Mr. Watkins said, his client was in the Craighead County Jail at Jonesboro, Arkansas, "refusing at that time to waive extradition." Mr. Watkins came to the jail at Kennett, where he talked to the sheriff, and then discussed the case with Mr. Charles H. Baker, the Prosecuting Attorney of Dunklin County. According to Mr. Watkins, he and Mr. Baker "discussed the Missouri penalties for what Frankie was charged with", and Mr. Baker stated that if he were asked for a recommendation, he would recommend a five year sentence.

Mr. Watkins went back to Paragould, prepared a waiver of extradition, and had the defendant sign it. He told the defendant "after looking at all the circumstances, [he] believed the best thing for [defendant] to do was enter a plea of guilty, and go ahead and waive extradition." Being asked what "circumstances" he referred to, Mr. Watkins answered, "On the statement that I had read of the co-defendant in this case, and what the co-defendant had told me, I had talked to him over in the jail, too." When he was asked "what else" he based his recommendation on, Mr. Watkins stated he had erroneously assumed "that the practice here in Missouri was the same as I had been used to in Arkansas, that when the Prosecuting Attorney makes a recommendation on a negotiated plea

---

1. All references to Missouri Statutes are to this revision; references to Missouri rules are to Missouri Rules of Court (1973), as amended.

. . . it is accepted by the Court, and, if not, the defendant [is] given an opportunity to withdraw his plea of guilty." In the course of his direct examination, Mr. Watkins several times reiterated that he thought he was dealing with a "negotiated plea".

On cross-examination, Mr. Watkins was asked if he recalled having been told by Mr. Baker that the trial court would not be bound by any recommendation, and he answered that he did. He did not remember having been told by Mr. Baker that the trial court did not permit plea bargaining in Dunklin County, but he did recall that at the time defendant entered his plea, defendant was asked if he understood that any agreement between his counsel and the Prosecuting Attorney concerning recommended punishment would not be binding on the court. Mr. Watkins "didn't know" whether or not his client understood that warning. Pressed as to his understanding of his client's situation and his recommendations to his client, Mr. Watkins said, "Before his plea I told him that the Court wouldn't be bound by any recommendation, but it had always been my experience that the Court did follow, and I assumed that he would in this case." Otherwise, on cross-examination Mr. Watkins was unable to recall specifically what he and Mr. Baker had discussed. He did, he said, discuss the possibilities of defense with the defendant, but since he was not familiar with "Missouri procedures", he was not sure he discussed all possible defenses. Mr. Watkins further stated that he had intended "to do the best job I was capable of", and that he had thought he was able to represent his client properly.

Mr. Watkins was asked several questions by the court. He was asked to recall specifically what he had told his client, and he answered:

"The exact words I told him was that I had talked to the Prosecuting Attorney —*now, I don't remember the exact words, Your Honor*—in substance this is what I said to him: That I had come over here and I had talked to the Prosecuting Attorney, and that the Prosecuting Attorney would recommend a five year sentence, and I advised him to waive extradition and come to Missouri and cooperate with the authorities in Missouri, and to enter a plea of guilty." (emphasis added)

Further, the trial court asked Mr. Watkins, "[I]n your investigation of the facts and circumstances surrounding this alleged crime, was it your professional opinion that in view of those facts and circumstances that your client did not have any legal defense to this action?" Mr. Watkins' answer was, "That was my opinion, Your Honor."

The defendant, testifying in his own behalf, stated that he was "currently" imprisoned at the Missouri Training Center for Men at Moberly. When he first saw Mr. Watkins in connection with this conviction, defendant had been told that Mr. Watkins "would come over and have a talk with the guy that we robbed, and then also a conversation with Mr. Baker there." Mr. Watkins had also told defendant (later, apparently) that "he came over and made some kind of deal where I would get five years, and for me to go ahead and sign extradition and not cause no trouble for these people over here." On the day of sentencing, defendant had been told by Mr. Watkins, " 'The deal is on for five years, go on up and get it done with and get your sentence on the road.' " The defendant had heard the trial court inquire, when he entered his guilty plea, whether any promises had been made, but he had said none had been made because he "figured if I didn't [answer negatively] that the deal would just flop right there, and I was sort of shook up over the whole thing, and I wouldn't know what would happen." Asked to state exactly what his reason was for asking that his sentence be vacated, defendant candidly answered, "Well, sir, whenever my lawyer came over and was talking to me it was just for a five year

sentence, and whenever I came up and got a twelve year sentence I decided the best thing to do was go back and see if I could get it cut."

On cross-examination, defendant was asked about the allegation in his post-conviction motion that he was denied effective assistance of counsel. Defendant said that the only matter Mr. Watkins had advised him of "was about a deal that [the Prosecuting Attorney] and him had going." Being asked if he was in fact guilty of the crime to which he pleaded guilty, defendant answered, "Yes, sir, I am."

Defendant was asked if he remembered being asked a number of questions by the trial court at the time he entered his plea. Defendant remembered being asked questions, but said he "didn't understand them clearly." He had not asked the court to explain any of the questions "because I figured if I asked the Judge to explain any of the questions, that it would make you mad in a way where you wouldn't recommend the five years or go through with your deal." Why, defendant was asked, did he believe Mr. Baker might "get mad" if he directed a question to the court? His answer was, "Well, say I asked the Judge to explain the question about asking for due process of law, something like that, then the Judge might have thought you wasn't doing your job correctly." Defendant was also asked if he remembered being told that he had the right to a speedy and public trial; the right to see, hear and question all the witnesses against him; the right at the trial to present evidence in his own behalf, and the right either to testify or remain silent. Being asked if he understood those questions, defendant replied that he "didn't clearly understand them." Defendant was further asked if he remembered the trial court's inquiry whether he understood the trial court's questions at the time he entered his plea; defendant did, and he remembered having said he understood; defendant was listening, he said, but "had no use to try to understand [the questions], because I figured that you and

Mr. Watkins would go ahead with your deal." It was further brought out on defendant's behalf that he was only 17 years of age at the time he entered his plea of guilty and that his previous experience in court had been acquired when he was 15 or 16 years of age.

On behalf of the State, Mr. Baker testified that he was Prosecuting Attorney of Dunklin County, and that he had served in that capacity since October 25, 1962, with the exception of the years 1969 and 1970. Mr. Baker stated that when Mr. Watkins informed him that he represented the defendant, the matter of a preliminary hearing was specifically discussed, and he explained the nature and purpose of a preliminary hearing to Mr. Watkins, and further told Mr. Watkins that he believed he had the ability to extradite the defendant from the State of Arkansas, and intended to do so. Mr. Baker also testified that he and Mr. Watkins had discussed the possibility of a plea of guilty; he could not remember whether he and Mr. Watkins had specifically discussed the maximum penalty for robbery in the first degree, but they had discussed the minimum penalty, and on that occasion, Mr. Baker informed Mr. Watkins that if he was called upon to make a recommendation, he would recommend five years. Mr. Baker continued: "I informed him on that occasion that my recommendation was not ordinarily asked for by the Judge of the Circuit Court of [Dunklin] [C]ounty, and it had not been asked since—for several years. I also informed him that the Court in any event was not bound by any agreement [we might make], and that we did not have plea bargaining in the sense that that term is used, in this county."

The State also introduced in evidence two transcripts of the proceedings had in the trial court in connection with the defendant's plea of guilty. The first of these transcripts shows that on June 28, 1971, defendant appeared in open court with Mr. Watkins, and waived formal arraignment. Defendant was asked his age, and the ex-

tent of his education. Defendant replied that he was 17 years of age, and had an "eighth grade" education. Defendant had had "prior Court experience", which, in his words, consisted of "burglary and larceny" at Paragould. Without burdening this opinion by setting forth word for word the inquiries directed to the defendant and his responses thereto, we note that the defendant's federal constitutional rights were fully explained to him, and he was asked if he understood he would waive those rights by entering a plea of guilty. Defendant answered, "Yes, sir." Moreover, defendant answered, "No, sir", in response to the trial court's question, "Has anyone told you or promised or suggested to you that you would receive a lighter sentence or probation or parole or any other favors to get you to say you are guilty of this charge?"; defendant responded negatively to the trial court's question whether any threats or promises had been made by anyone, and answered, "Yes, sir", when he was asked if he had committed the acts constituting the crime charged—as recited by the Prosecuting Attorney—except, as noted, he corrected the recitation of those facts by advising the court that "there wasn't no $173.00, [only] $158.00." The defendant was told at the time he entered his plea that the court would assess no punishment until it had seen defendant's past criminal record, and Mr. Watkins was told he would be furnished with a copy of the presentence investigation and report which the trial court requested from the Board of Probation and Parole.

The other partial transcript—that of the proceedings had when defendant was sentenced—shows that on July 26, 28 days after defendant entered his plea, defendant again appeared in open court with Mr. Watkins. Mr. Watkins was given the opportunity to clarify or explain defendant's criminal record as it appeared from the presentence investigation. He undertook to do so, explaining that "[o]n the misdemeanors that are listed here," it was a common practice "to pay these things off [rather] than . . . contest [them]",

and said that on the "one felony charge" there had been no actual sentence (defendant was placed on probation) and he asked the trial court to consider the defendant as a first offender. The trial court, after hearing Mr. Watkins and a probation and parole officer, sentenced defendant to a term of twelve years imprisonment.

Such, generally stated, was the material evidence received on the hearing of the motion. At the conclusion of the evidentiary hearing, the trial court entered the following findings: 1) that no official of the State made any promises or any inducements to the defendant in exchange for the defendant's guilty plea; 2) that defendant's attorney did not promise defendant a five year sentence for a guilty plea; 3) that Mr. Baker told Mr. Watkins that if the court asked for a recommendation, he would recommend a five year sentence, but further made it clear that it was the policy of the Circuit Judge not to ask for recommendations; 4) that defendant's plea was not entered as a result of coercion or duress; 5) that the defendant was not a credible witness and was not worthy of belief; 6) that defendant was not denied his right to consult with Mr. Watkins; and 7) that in the circumstances Mr. Watkins effectively assisted the defendant as his counsel. The court concluded as a matter of law that defendant's guilty plea was voluntarily and constitutionally given, entered and accepted. This appeal followed.

In arguing his contention that he did not have the effective assistance of counsel upon his guilty plea, defendant has quoted parts of Mr. Watkins' testimony, particularly his statements that he erroneously assumed that the "practice" in Missouri was the same as in Arkansas, that he thought he was dealing with a "negotiated plea", and his further testimony that he was not sure he advised defendant of all possible defenses, since he was not familiar with Missouri procedure. On the basis of these statements and others made by Mr. Watkins at the evidentiary hearing, defendant maintains that he was not effectively rep-

resented. For several reasons, we consider the point to be without substantial merit.

▆▆▆▆ In the first place, it is in no manner demonstrated that in the area involved, the substantive law of Arkansas differs greatly from the law of Missouri. In Arkansas, robbery is defined as ". . . the felonious and violent taking of any goods, money or other valuable thing from the person of another by force or intimidation; the manner of the force or the mode of intimidation is not material, further than it may show the intent of the offender." Ark.Stat.Ann. § 41–3601 (1964 Repl.). Though it is more detailed, our statute, § 560.120, begins by defining robbery in the first degree as the felonious taking of the property of another from his person, or in his presence, and against his will, by violence to his person, or by putting him in fear of some immediate injury to his person. Our statute goes on to extend the crime specifically to the taking of the property of another from the person of the owner's wife, servant, clerk or agent in charge thereof, but in Arkansas, the crime of robbery extends to the taking of property belonging to the person robbed, or to a third person, Boles v. State, 58 Ark. 35, 22 S.W. 887 (1893), and so, essentially, both statutes are merely declarative of the common law. State v. Parker, 262 Mo. 169, 176–177, 170 S.W. 1121, 1123[1] (1914); Boles v. State, supra, 22 S.W. at 887[2]. It is true that the penalty prescribed for robbery in Arkansas is less severe than that prescribed for robbery in the first degree in Missouri, but in Arkansas the crime of robbery is a very serious crime, punishable by imprisonment for a term not less than three nor more than twenty-one years. Ark.Stat.Ann. § 41–3602 (1964 Repl.). As for plea bargaining, our Supreme Court has recognized its existence as a fact of judicial life, State v. Tyler, 440 S.W.2d 470, 474[4–7] (Mo. banc 1969); Coleman v. State, 473 S.W.2d 692, 697[5] (Mo.1971), as has the Supreme

Court of Arkansas. Meyers v. State, 479 S.W.2d 238, 241[6] (Ark.1972). And, while we are not inclined to disregard Mr. Watkins' testimony concerning the local practice in the Second Judicial District of Arkansas,[2] the substantive law of Arkansas seems to be that a criminal defendant's right to rely on a plea bargain is dissipated by a direct forewarning that the court does not intend to be bound by the state's recommendation, and an accused who knowingly pleads guilty in the hope that he will receive a milder punishment is bound thereby unless it appears that the plea was based on a misrepresentation by the accused's own attorney, or the state's attorney or someone else in authority. Cross v. State, 248 Ark. 553, 452 S.W.2d 854, 855–856 (1970). Like principles apply in this state. State v. Rose, 440 S.W.2d 441, 443–445[3] [4] [5] (Mo.1969). The fact that defendant's counsel was educated and practiced in another jurisdiction, and was not familiar with the local rules of practice obtaining in Dunklin County, did not, in this case, render his assistance ineffective in Missouri.

▆▆▆▆ Further developing this point, defendant strongly urges upon this court that Mr. Watkins' advice was based solely upon a misunderstanding of local practice, and in this connection, he has again meticulously set forth and drawn to our attention that part of Mr. Watkins' testimony which indicates that he based his advice to the defendant on the mistaken assumption that Missouri "practice" permitted a defendant to withdraw his plea of guilty if the court declined to accept a plea bargain or "negotiated plea". Because we review the case only to determine whether or not the trial court's findings are clearly erroneous, Shoemake v. State, 462 S.W.2d 772, 775 [3] (Mo. banc 1971); Crosswhite v. State, 426 S.W.2d 67, 70–71[1] (Mo.1968), we have studiedly set forth the evidence at considerable length precisely to show that it is susceptible of differing interpreta-

2. See Note, Effect of Plea Bargaining on Withdrawal of Guilty Plea After Sentencing, 23 Ark.L.Rev. 281, 285–286 n. 26 (1969).

tions, and the trial court could reasonably have concluded that Mr. Watkins advised the defendant to plead guilty because he believed defendant *was* guilty and had no meritorious defense. Parts of the record, particularly Mr. Watkins' response to the trial court's question whether, in Mr. Watkins' professional opinion, defendant had a legal defense to the criminal charge, would support such a conclusion and the trial court's specific finding that Mr. Watkins adequately represented the defendant.

 In the final analysis, however, the defendant's right to the effective assistance of counsel, a right he indubitably had on his plea of guilty, McMann v. Richardson, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 1449, n. 14, 25 L.Ed.2d 763, 773, n. 14 (1970), does not include a requirement that all advice given by his lawyer withstand retrospective examination in a postconviction hearing; rather, an accused, in pleading guilty, assumes the risk of ordinary error in either his or his attorney's assessment of the law and the facts, and is bound by his plea unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act. McMann v. Richardson, supra, 397 U.S. at 770, 774, 90 S.Ct. at 1448, 1450, 25 L.Ed.2d at 773, 775. We find no such serious derelictions upon this record. Mr. Watkins interviewed defendant's accomplice, discussed the case with Mr. Baker, and read the statement which the accomplice had signed for the prosecuting attorney. His client had, in his professional opinion, no meritorious defense. Arkansas' rule concerning accomplice testimony is somewhat broader than ours, Ark.Stat.Ann. § 43–2017 (1964 Repl.), but certainly an accomplice who has been separately charged may testify in Missouri, State v. Shepard, 334 Mo. 423, 430, 67 S.W.2d 91, 95[8] (1933), and even if the accomplice is jointly indicted, he may testify as soon as he has been convicted. State v. Blevins, 427 S.W.2d 367, 369[1] (Mo.1968).

Moreover, a conviction may be had upon the uncorroborated evidence of an accomplice, unless such testimony is so lacking in probative force as not to amount to substantial evidence. State v. Morgan, 453 S.W.2d 932, 934[3] (Mo.1970). In addition, Mr. Howard, the employee who was assaulted, was still presumably available as a witness. The decision to plead guilty involves predictions and judgments of unavoidable uncertainty and if Mr. Watkins' advice to his client was in part motivated by his mistaken assessment of Missouri practice, at least as credible an explanation is that he believed his client, a stranger in a strange land, so to speak, would receive more lenient treatment from the judge than from a local jury. Upon the record presented, we do not consider the trial court's finding that defendant was effectively assisted by Mr. Watkins to be clearly erroneous.

 The defendant further assails the trial court's judgment on the related and overlapping ground that his guilty plea was not voluntarily made with understanding of the nature of the charge, as required by Rule 25.04. Essentially, defendant maintains that he entered his plea upon the assurance of counsel that he would receive a five year sentence, and that that assurance was based upon Mr. Watkins' belief that he had entered into a binding plea bargain. Defendant argues that the trial court should have forewarned him that it would not accept a plea bargain and then given him an opportunity to withdraw his plea of guilty.

The difficulty with this contention is that it assumes the testimony received at the evidentiary hearing compels or requires the conclusion that Mr. Watkins "assured" or "promised" defendant that he would receive a five year sentence upon his guilty plea. Such is not the case. Mr. Watkins' testimony upon the evidentiary hearing was, in many respects, vague and equivocal. When pressed as to what he told his

client, he was unable to "remember [his] exact words", and he understood that the State's recommendation was not binding on the court; that, he said, was "elementary". As far as the defendant is concerned, the trial court almost literally complied with the procedure recommended in United States v. Cody, 438 F.2d 287, 289–290 (8th Cir. 1971), when it accepted his plea of guilty on June 28, 1971. At that time, the defendant was asked directly if anyone had told him or promised him or suggested that he would receive a lighter sentence or probation or parole or any other favors to get him to say he was guilty. Defendant answered negatively. The defendant was further asked if any threats or promises had been made by anyone, and he answered, "No, sir." At the evidentiary hearing on May 22, 1972, defendant admitted that he had been asked those questions, and that he had answered negatively, but stated that he had not "clearly understood" the questions. The weight of the evidence and the credibility of the witnesses were matters for the trial court, Shoemake v. State, supra, 462 S.W.2d at 775[2], and with defendant's directly contradictory statements before it, the court manifestly had a choice, and obviously could have found that defendant's guilty plea was voluntary and knowing, made without reliance on any supposed plea bargain. Moreover, as noted in State v. Rose, supra, 440 S.W.2d at 446[5], a finding that no one, including defendant's counsel, made promises which might reasonably have misled defendant, would negate the contention that the defendant was misled by his own attorney. In this case, the trial court explicitly found that no promise of any kind was made by the State or Mr. Watkins, and here again we cannot say that on the entire evidence, we are left with the "definite and firm conviction that a mistake has been committed", that is, that the trial court's findings are clearly erroneous. The judgment is therefore affirmed.

TITUS, C. J., concurs.

STONE, J., concurs.

BILLINGS, J., not participating because not a member of the court when the cause was submitted.