**STATE of Missouri, Respondent,**

v.

**Larry HUFFMAN, Jr., Appellant.**

**No. WD 34112.**

Missouri Court of Appeals,
Western District.

Oct. 11, 1983.

L.R. Magee, Hines & Magee, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Dan Crawford, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P.J., and DIXON and NUGENT, JJ.

NUGENT, Judge.

Defendant Huffman was convicted by a jury of burglary in the second degree under § 569.170 [1], and stealing under § 570.030. He was sentenced to two years imprisonment for burglary and was fined $1,000 for stealing. On this appeal, Mr. Huffman contends that his conviction should be reversed because the evidence was insufficient to prove all of the elements of the crime of stealing and because the prosecution was permitted to subpoena a severed co-defendant to appear and testify as a witness although it knew that the witness would invoke his privilege against self-incrimination. We affirm the conviction.

Defendant Huffman and Charles Milligan were jointly charged with the crime of burglary and stealing property of a value of at least one hundred fifty dollars. Upon defendant's motion, his case was severed and separately tried on March 2, 1982. Milligan's trial, conviction, and appeal are reported in *State v. Milligan,* 648 S.W.2d 913 (Mo.App.1983).

Prior to defendant Huffman's trial, his attorney had moved to quash a subpoena served on Milligan requiring him to appear as a witness for the state in defendant's trial. In the pretrial conference, defendant Huffman's attorney again moved to quash the subpoena on the grounds that Milligan was incompetent to testify under § 546.280 in that the two men were jointly charged in the information. The prosecuting attorney contended that co-defendant Milligan was a competent witness under Missouri case law.

Defendant's attorney shifted the argument as to the witness' competency as follows:

Defense Counsel: [I]f Mr. Milligan is ordered to appear in response to the subpoena, and he does testify, any testimony that he makes can be held against him. . . . And with that possibility, Mr. Milligan can be expected to refuse to testify. And in refusing to testify, why, that brings the usual inference of guilt to a lay jury, not understanding the legal ramifications. And, therefore, the State, by doing this—is attempting to take a strategic advantage improperly.

The prosecutor responded that "a witness can be required to take the witness stand and invoke the Fifth Amendment, if that is his desire." He further commented, "We don't know exactly what he [Milligan] will do, Judge." The court without further inquiry overruled defendant's motion.

1. All sectional references are to Revised Statutes of Missouri, 1978.

The state called Milligan to the stand during its case-in-chief, and the witness on the ground of self-incrimination refused to answer the three questions[2] put to him by the prosecutor. The prosecutor made the following comment upon the witness' refusal to testify.

> Prosecuting Attorney: Well I want the jury to understand very clearly why it is that you are invoking this Fifth—

At this point, defense counsel objected and asked for a mistrial. The motion for a mistrial was denied, but the objection was sustained, and the jury was instructed to disregard the prosecutor's last comment.

The evidence consistent with the jury's verdict was as follows. On the evening of March 1, 1981, Walter Rush, owner of Rush Roller Rink, counted the money in his two cash registers, locked up his rink and left for the night. When he opened for business the next morning, he found that all except a little silver was gone. He calculated that $125 had been taken. He also found that someone had broken into a number of pinball and video coin machines kept on his premises.

A.J. Hilbrenner, the owner of the amusement games, testified that the games were checked and emptied every Thursday and that on the two Thursdays immediately preceding the break-in, $480 and $560 had been removed from the games. The Thursday immediately after the break-in, $374 was removed.

On the night of the burglary, defendant Huffman, Jeffrey Reynolds and Charles Milligan met at Clyde Eaton's home. Jeffrey Reynolds testified for the state that from there defendant Huffman, Charles Milligan and he went to the Rush Roller Rink and broke in. They rifled the two cash registers and the pinball and video coin machines of approximately $350. Defendant and his two companions then returned to Clyde Eaton's home. They divided the money among themselves and gave Charles Eaton the change. Reynolds testified that his share was about $100 and Eaton testified that he got between $20 and $40 in change.

Defendant first contends that his motions for judgment of acquittal should have been sustained because the evidence was insufficient to prove beyond a reasonable doubt that the amount taken was at least $150. While a criminal defendant has a due process right to have the state offer evidence from which any reasonable trier of fact can find the elements of the crime charged beyond a reasonable doubt, *Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979), the state is entitled to the most favorable construction of all the evidence and all reasonable inferences which may be drawn from it, and the evidence is reviewed in the light most favorable to the result reached. *State v. Letterman,* 603 S.W.2d 951 (Mo.App.1980).

The state's evidence, consistent with the jury's verdict, amply supports a finding that *at least* $150 was taken from the roller rink. Reynolds testified that they took approximately $350 from the video and pinball coin machines and that he received about $100 when the money was divided three ways, the remaining change being given to Charles Eaton. Eaton testified that he received between $20 and $40 in change. This total ranging from $320 to $350 corresponds to the approximate loss testified to by the owners. *See State v. Milligan,* 648 S.W.2d 913, 915 (Mo.App. 1983). Thus, defendant's first point of error has no merit.

Defendant next contends that the trial court erred in denying defendant's motion to quash the subpoena requiring Charles Milligan to appear and testify in defendant Huffman's trial. This argument rests on a two-part basis: (1) that Milligan was an incompetent witness under § 546.280 and (2) that requiring Milligan to appear and assert his Fifth Amendment right not to

---

**2.** "Mr. Milligan, for the jury and the court's record in this case would you repeat your complete name."

"Mr. Milligan, do you recall where you were on the night of March 1st and 2nd, 1981?"
"Who was with you that night Mr. Milligan?"

incriminate himself was highly prejudicial to defendant Huffman.

■ Defendant contends that under § 546.280 Milligan was incompetent to testify in defendant Huffman's trial because they had been jointly charged with the same crimes in the same information. Section 546.280 reads as follows:

When two or more persons shall be jointly indicted or prosecuted, the court may, at any time before the defendants have gone into their defense, direct any defendant to be discharged, that he may be a witness for the state. A defendant shall, also, when there is not sufficient evidence to put him on his defense, at any time before the evidence is closed, be discharged by the court for the purpose of giving his testimony for a codefendant. The order of discharge shall be a bar to another prosecution for the same offense.

Although the two cases on which defendant relies, *State v. Nickens,* 581 S.W.2d 99, 101 (Mo.App.1979), and *State v. Shives,* 601 S.W.2d 22, 29 (Mo.App.1980), recite the general rule that under § 546.280, a co-indictee is incompetent to testify against another indictee, the courts in those cases held that the witnesses were competent to testify because the witnesses were not jointly charged with the defendants. They were not co-indictees. Nonetheless, Missouri has long adhered to the rule that, where two persons are jointly indicted for the same offense, one may not testify against the other while the witness' case is still pending. *State v. McGray,* 309 Mo. 59, 273 S.W. 1055 (Mo.1925).

No dispute exists regarding the fact that defendant Huffman and Charles Milligan were jointly charged with the same offenses in one information—that they were co-indictees. Thus, the only issue is whether at the time of defendant Huffman's trial the charges against Milligan were still pending and undisposed of for purposes of § 546.280.

At the time of the pretrial conference and the defendant's trial, Charles Milligan had been tried and convicted, and his motion for a new trial had been denied. He had not, however, been sentenced. A presentence investigation was being conducted, and his time for appeal had not yet expired.

Missouri cases have specifically held that an individual who has been jointly charged with the defendant is a competent witness in the defendant's trial immediately upon the jury's return of a guilty verdict in the co-defendant's trial. *State v. Peters,* 258 Mo. 334, 167 S.W. 520 (Mo.1914); *State v. Minor,* 117 Mo. 302, 22 S.W. 1085 (Mo.1893). *See also State v. Blevins,* 427 S.W.2d 367, 369 (Mo.1968); *State v. Reppley,* 278 Mo. 333, 213 S.W. 477, 479 (Mo.1919); *Dees v. State,* 492 S.W.2d 849, 956 (Mo.App.1973) (citing the above rule with approval). Because co-defendant Milligan had been found guilty by way of a jury verdict at the time of defendant Huffman's trial, he was not incompetent under § 546.280 to testify, and the trial judge did not err on that basis in denying defendant's motion to quash.

The defendant further contends in his second point that the trial court erred in denying his motion to quash because of the prejudicial effect of Milligan's refusal to testify. The defendant alleges that the state was "fully aware that he [Milligan] would take the Fifth Amendment" and that the state's purpose in calling him was to prejudice the jury against the defendant. Although the defendant cites no cases in support of his position, he asserts that he was thus denied his right to a fair and impartial trial.

Both the United States and Missouri Supreme Courts have addressed this issue. *Namet v. United States,* 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963); *State v. Wright,* 582 S.W.2d 275 (Mo.1979). In *Namet,* the government called two people as witnesses who had earlier pled guilty to charges arising out of the crime with which Namet was charged. Namet's attorney announced to the court and the government's attorney that the witnesses would refuse to testify on self-incrimination grounds and objected to the government's calling those witnesses. The objection was overruled and the witnesses invoked the Fifth

Amendment as to some matters and testified as to other relevant matters.

The Supreme Court summarized and reviewed two distinct theories on which lower courts rely in finding error when a witness claims his Fifth Amendment privilege. *Id.* 373 U.S. at 186–87, 83 S.Ct. at 1154–55. The first theory is based upon prosecutorial misconduct—a deliberate attempt by the government "to build its case out of inferences arising from the use of testimonial privilege." *Id.* at 186, 83 S.Ct. at 1154–1155. The second theory is based upon the conclusion that, in particular circumstances, inferences from a witness' pleading the privilege are so critical to the prosecution's case that unfair prejudice results. *See also United States v. Kaminski,* 692 F.2d 505, 515 (8th Cir.1982) (explaining the two theories announced in *Namet*).

The Supreme Court, in *Namet,* did not find that the record supported any inference of prosecutorial misconduct. The Court wrote at 373 U.S. 188, 83 S.Ct. 1155, "It is true, of course, that Mr. Fitzgerald announced that the Kahns would invoke their testimonial privilege if questioned. But certainly the prosecutor need not accept at face value every asserted claim of privilege, no matter how frivolous." Nor did the Court find that the inferences from the witnesses' refusal to answer were so critical to the prosecution's case that they constituted reversible error. The Court found that the effect of the invocations of the privilege by the witnesses "was minimized by the lengthy nonprivileged testimony" which they gave. *Id.* 373 U.S. at 189, 83 S.Ct. at 1156.

In *State v. Wright, supra,* defendant Andre Wright had been convicted of robbery. The Missouri Supreme Court reversed and remanded for error in the admission and the state's use of certain evidence. Because the case was to be remanded, however, the Supreme Court addressed defendant's point on appeal involving the state's calling of a witness the state knew would invoke the Fifth Amendment.

The witness in question, Dorothy McKelvey, was the driver of the car in which Andre Wright and two other men were apprehended. Earlier in the trial of another of the defendants, Jerome B. Wright, a companion case, the state had called Ms. McKelvey as a witness. In that trial she had invoked the privilege. *State v. Wright,* 571 S.W.2d 734 (Mo.App.1978). Before defendant Andre Wright's trial, Ms. McKelvey had informed both defendant Andre Wright's attorney and the prosecuting attorney's office that, if she were called to testify in Andre Wright's trial regarding her actions on the night in question, she intended to avail herself of the Fifth Amendment privilege against self-incrimination. Andre Wright's attorney discussed that development with the prosecuting attorney and the judge in chambers during trial. Over defendant's objection, the state was allowed to call the witness, and she invoked the privilege.

The Missouri Supreme Court cited at length those portions of *Namet* that summarize and review the lower court's two theories for finding error when a witness claims his Fifth Amendment privilege. The court concluded that the trial court had abused its discretion in allowing Ms. McKelvey to testify because the state had purposely called the witness to the stand so that the witness would "invoke the Fifth Amendment in the jury's presence in order that the jury would believe from such claim of privilege that the witness and the defendant were engaged in criminal conduct." *Wright,* 582 S.W.2d at 283. The *Wright* court distinguishes its facts from the facts in *Namet.* In *Namet* a reasonable question existed concerning whether the witnesses, who had pled guilty, could lawfully invoke the privilege; not so in *Wright.* Ms. McKelvey, who had not been charged but admittedly could have been, clearly could invoke the Fifth. Moreover, in *Wright,* the witness, Ms. McKelvey had apparently herself advised the prosecuting attorney that if she were called as a witness she would do so. The prosecutor and the trial judge also knew that she had used the privilege in the earlier trial. Finally, the prosecuting attorney in his brief admitted that the state

called the witness "in order to obtain the advantage of inference derived from her refusal to testify." None of those facts existed in *Namet.* Thus, under those facts and circumstances, the court in *Wright* stated that "the objection to a witness testifying should be sustained."

The Missouri Supreme Court acknowledged that the question whether a trial judge had abused his discretion in permitting a witness to testify when it is claimed that the witness will invoke the Fifth Amendment does not lend itself to hard and fast rules. Rather, the court stressed the necessity of considering the facts and circumstances that prevail at the time the question arises.

The facts and circumstances in the present case appear to us to be more akin to those in *Namet* than to those in *Wright.* Our case is similar to *Wright* in only one respect: the question of the legality of the witness' invoking his privilege did not arise in either case. (Although the issue of *who* [defendant Huffman or co-defendant Milligan] could assert the privilege was raised in the court below, the issue of *whether* the privilege could be asserted was not.) We believe that the following differences between the instant case and *Wright,* however, outweigh this one similarity. We have no record of witness Milligan informing the prosecuting attorney that he intended to invoke the Fifth Amendment. We only have a record of the prosecutor's recognition that the witness might do so. Second, we have no record that Milligan had claimed the privilege in a prior trial. Finally, the prosecutor never specifically stated that his purpose in calling the witness was to have the jury hear the witness invoke the privilege. Although he came very close to doing so in the pretrial conference, by stating that "a witness can be required to take the witness stand and invoke the Fifth Amendment, if that is his desire", he never stated that he knew the witness would do so or that such was his purpose in putting the witness on the stand. Here the prosecutor has never admitted, as did the prosecutor in *Wright,* that his purpose was to obtain the advantage of infer-

ence from co-defendant Milligan's refusal to testify.

■ In light of these differences, we cannot hold that the prosecutor knowingly and deliberately attempted to build his case out of inferences arising from an invocation of the privilege. Nor are we able to hold, absent prosecutorial misconduct, in the circumstances of this case, that the inferences which may have been created from Milligan's use of the privilege were so critical to the prosecution's case that unfair prejudice resulted. Ample evidence exists in the record to establish defendant's guilt notwithstanding the co-defendant's appearance. *United States v. Kaminski, supra.* Jeffrey Reynolds testified in detail to the crime and defendant's involvement therein. His testimony was corroborated in part by Clyde Eaton. Our holding, however, is a narrow one limited to the facts and circumstances of this case.

We think it necessary to point out what this case does not involve and the issues it does not present. This case does not present the issue whether defendant under the facts of this case would have been entitled to a cautionary instruction by the judge to the jury that they must not use the witness' refusal as evidence against the accused had defense counsel requested it. (Defense counsel did object to the prosecutor's commenting on the witness' invoking the Fifth and the court instructed the jury to disregard the prosecutor's comment. Defense counsel did not however request that such an instruction be given as to the inferential effect of the witness invocation of the privilege.) Nor does this case present the issue whether defendant would have been entitled to a preliminary screening of the witness' testimony outside the hearing of the jury had he requested it. Finally, finding as we do that this case does not involve prosecutorial misconduct or inferences of critical importance, we do not address the issue of whether plain error would result absent an instruction or preliminary screening by the trial court in those cases where prosecutorial misconduct or inferenc-

es of critical importance were found. *See United States v. Maloney,* 262 F.2d 535 (2nd Cir.1959) (reversing on the ground that error resulted where trial court failed *sua sponte* to give cautionary instructions that the jury must not use the witness' refusal as evidence of what his answers would have been.)

Of course, the trial judge is not

a mere functionary to preserve order and lend ceremonial dignity to the proceedings. As the central figure at the trial mantled with neutrality, it is the judge's responsibility to direct and guide the course of the trial in such manner as to give the jury fair opportunity in the opposing actions of the adversary parties to reach an impartial result on the issue of guilt.[3]

In this instance the trial court has an exquisitely simple device for avoiding any of these questions: On its own motion the court can conduct a voir dire examination outside the jury's hearing wherever the prospect of an invocation of the privilege by a prosecution witness appears. If the witness claims his privilege, he may be excused, and if, after appropriate advice as to his rights, he does not, the court may permit the prosecutor to call him.

For the foregoing reasons, we affirm the judgment of conviction.

All concur.

3. Introduction, *The Function of the Trial Judge,* A.B.A. Standards Relating to the Administration of Criminal Justice, Compilation, p. 163.