**STATE of Missouri, Respondent,**

**v.**

**Kenneth William REGISTER, Appellant.**

**No. WD 73390.**

Missouri Court of Appeals, Western District.

May 22, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 26, 2012.

Application for Transfer Denied Sept. 25, 2012.

Matthew Ward, Columbia, MO, for Appellant.

Timothy Blackwell, Jefferson City, MO, for Respondent.

Before: CYNTHIA L. MARTIN, P.J., THOMAS H. NEWTON, and KAREN KING MITCHELL, JJ.

THOMAS H. NEWTON, Judge.

Mr. Kenneth William Register appeals a conviction for first-degree statutory sodomy, section 566.062. Mr. Register challenges the trial court's ruling to allow a state's witness to testify for the sole purpose of invoking the privilege against self-incrimination. We reverse and remand for a new trial.

**Factual and Procedural Background**

Mr. Register was arrested and charged with two counts of first-degree statutory sodomy, section 566.062,[1] and one count of first-degree statutory rape, section 566.032. At a jury trial, several witnesses testified, including the victim and Ms. Windy Register, the victim's stepmother. The victim testified that Mr. Register, her father, placed his hands down her pants and touched her vagina with his fingers one night during one of her weekend visits at his trailer home. She testified that her half-sister and Ms. Register were asleep in a different room when the incident occurred.

The victim also testified that on Memorial Day weekend of 2008, Mr. Register "bribe[d]" her to leave the trailer home and go to a new house that he and the family would soon move into, by telling her that if she did not go with him that "[she]

---

1. Statutory references are to RSMo 2000 and the Cumulative Supplement 2008.

would not be able to go on the truck with [her] Uncle Rick anymore." She testified that while at the house, Mr. Register placed a mattress on the floor, which they laid down upon together. He pulled her pants down and then touched her vagina with his fingers; got on top of her; touched her with his penis and then put it inside of her; and finally, he placed her hands on his penis. The victim further testified that Ms. Register discovered them the next morning lying on the mattress and saw the victim pulling up her pants as Mr. Register ran to the back porch.

On cross-examination, the victim admitted to telling defense counsel during deposition that "nothing ever happened at the trailer." She also admitted that during deposition she agreed that "no finger [had been] inside [her] vagina" nor had a penis or anything been inside her vagina. She testified that she could not remember telling her mother or her grandmother that Mr. Register in a drunken state rolled over in his sleep and touched her vagina on Saturday night of the Memorial Day weekend at the new house, but admitted to speaking with them around that time.

The victim's half-sister testified that she told a forensic interviewer in July 2008 that she had witnessed Mr. Register "trying to have sex with" the victim on the floor in the trailer and provided a detailed account of the incident. On cross-examination, she admitted that the statements reported to the forensic interviewer, including the specific details, were lies that she had told at the victim's behest.

Mr. Charles Delaney of the Children's Division, the investigator assigned to the case, testified that Mr. Register denied the allegations of sexual molestation against the victim and stated that on Saturday night of the Memorial Day weekend, he and the victim went to the new house.

Mr. Register also told him that in the morning, he was out back and had heard "the door jiggle." He then quickly ran back in the house from urinating, and forgetting to tie his shorts, they fell down. In a subsequent interview, Mr. Register reported that he had drunk fifteen cans of beer on that night. He told Mr. Delaney that he did not remember anything happening, but he was sorry if it had. He informed Mr. Delaney that Ms. Register asked him why his pants were down, and he told her that he forgot to tie them. She also asked why the victim was putting on her panties when she came in, and he replied that "she couldn't find her shorts or something."

The State subpoenaed Ms. Register to testify prior to trial, but Ms. Register's counsel informed the prosecutor that Ms. Register would not testify if called, pursuant to the right against self-incrimination and a right of privacy. Ms. Register was granted immunity at the State's request. Nevertheless, Ms. Register's counsel informed the prosecutor that Ms. Register would not testify. The State called Ms. Register as a witness. She answered three questions about where she lived and with whom she lived; but when asked about her whereabouts on Memorial Day weekend of 2008, she invoked her rights to remain silent under the Fifth Amendment (right against self-incrimination) and Ninth Amendment (right to privacy). Ms. Register was held in contempt and sent to jail.

After closing arguments, the case was submitted to the jury on all three counts. The jury acquitted Mr. Register of two of the counts and found him guilty of first-degree statutory sodomy for events that occurred during the Memorial Day weekend. Mr. Register appeals.

### Standard of Review

■ The trial court has discretion to allow a witness to testify and invoke the

privilege against self-incrimination rather than testify. *State v. Wright*, 582 S.W.2d 275, 282 (Mo. banc 1979); *State v. Fitzgerald*, 781 S.W.2d 174, 185 (Mo.App. E.D. 1989); *see also State v. Huffman*, 659 S.W.2d 571, 576 (Mo.App. W.D.1983). Thus, we review the decision for an abuse of discretion. *Wright*, 582 S.W.2d at 282. In analyzing whether the trial court abused its discretion, we look at the "facts and circumstances prevailing at the time the question arises." *Id.* at 283.

### Legal Analysis

In the sole point, Mr. Register argues that the trial court abused its discretion in requiring Ms. Register to be called as a State's witness because it knew that she would invoke her rights under the Fifth and Ninth Amendments and thereby violated his constitutional rights to due process and a fair trial. He claims that the State called Ms. Register "merely to have her assert her rights and use the inference that she is refusing to testify in order to protect her husband."[2]

■■■ "As a general rule, it is not improper for the trial court to require a witness to invoke the privilege against self-incrimination in the presence of the jury." *Hutson v. State*, 747 S.W.2d 770, 771–72 (Mo.App. E.D.1988). The trial court in its discretion may require a witness to take the stand when it is reasonably expected that the witness will provide legitimate testimony "in addition to invoking his privilege against self-incrimination, or when there is some question as to whether the witness will invoke this privilege at all." *State v. Schaller*, 937 S.W.2d 285, 288–89 (Mo.App. W.D.1996) (internal quotation marks and citation omitted); *see also Wright*, 582 S.W.2d at 282 ("[F]or the court to require a witness to [invoke the

privilege against self-incrimination in the jury's presence] presupposes some legitimate basis for calling the witness in the first place, such as some reasonable basis for believing the witness will give some relevant and material testimony."). However, a witness's assertion of the testimonial privilege cannot support an argument for favorable or unfavorable inferences relating to the issue of the defendant's guilt. *Wright*, 582 S.W.2d at 280. Thus, allowing the prosecutor to deliberately build its case out of inferences arising from the use of the testimonial privilege is error. *Huffman*, 659 S.W.2d at 575. Further, it is error to allow a witness to invoke the testimonial privilege in the presence of a jury when the inferences from a witness's assertion of the right "were so critical to the prosecutor's case that unfair prejudice resulted." *Id.*

■■■ The State contends that the trial court did not abuse its discretion in allowing the prosecutor to call Ms. Register to invoke the privilege in the jury's presence because the rule against the use of inferences announced in *Wright* does not apply if the witness's invocation is invalid. We must determine whether the parties can permissibly argue inferences drawn from an invalid invocation of the privilege against self-incrimination. We have found no Missouri cases on this particular issue, but there is a federal case on point.

In *U.S. v. Griffin*, the defendants argued that their rights were violated when the court prevented them from informing the jury that the witness refused to testify because the witness had waived the right to invoke the privilege against self-incrimination. 66 F.3d 68, 70 (5th Cir.1995). The *Griffin* court refused to distinguish an invalid invocation of the privilege against

2. We do not analyze if error occurred in allowing Ms. Register to invoke a right to remain silent under the Ninth Amendment on the witness stand.

self-incrimination from a valid one because "[j]uries are no less likely to draw improper inferences from an invalid assertion of the privilege than from a valid assertion." *Id.* at 71. We adopt this reasoning, since it is in line with the purpose behind the aforementioned rule, and apply the rule despite Ms. Register's invalid invocation. *See State v. Grays*, 856 S.W.2d 87, 92 (Mo.App. E.D.1993) (stating that the invocation is a focus of "ineradicable interest" to the jury, but "its probative force is weak and it cannot be tested by cross-examination") (internal quotation marks omitted).

■ Here, the record clearly shows that the prosecutor called Ms. Register to the stand to invoke her right to remain silent so that the jury could draw negative inferences from the invocation. In chambers, Ms. Register's attorney informed the trial court that Ms. Register would invoke the Fifth Amendment despite a court order granting her immunity and compelling her to testify. The trial court ruled that the State could call Ms. Register as a witness. In light of the favorable ruling, the prosecutor stated:

> I'm going to stop the proceedings. And when I'm done with my questions and ask that she be found in contempt and sent to jail or something along those lines. And, I mean, what you do after that is up to you. But what I'm saying is it won't happen outside—my opinion is it should not happen outside the presence of the jury, because it's a witness who's trying to do something that she doesn't have the privilege to do.

Before calling Ms. Register, the prosecutor elicited testimony from the victim that Ms. Register witnessed her and Mr. Register in the bed together on Memorial Day weekend. On the witness stand, the prosecutor asked Ms. Register about the Memorial Day weekend incident and she responded by asserting her right to remain silent. After her testimony, the prosecutor elicited testimony from Mr. Delaney that Ms. Register had asked Mr. Register certain questions about what she had observed on that Sunday morning of the Memorial Day weekend.

After evidence was closed, the prosecutor objected to Mr. Register's request for a jury instruction to prevent the jurors from drawing any negative inferences about the defendant's guilt from Ms. Register's assertion of her Fifth Amendment privilege against self-incrimination. The prosecutor stated, "I believe her refusal made in the presence of the jury is evidence. I believe the State can argue that evidence and any reasonable inference drawn from the evidence that would apply to that situation." Subsequently, the State argued during closing that Ms. Register did not handle the abuse correctly and failed to protect the victim because she did not testify. In Mr. Register's closing argument, defense counsel attempted to minimize the prejudice by telling the jury that it was unfair to speculate that Ms. Register did not want to testify against her husband when she invoked her privilege against self-incrimination. In rebuttal, the prosecutor argued the same inference to the jury that Ms. Register invoked the privilege to protect her husband. Defense counsel objected, and the trial court overruled the objection. The prosecutor's use of the invocation buttresses the contention that the State only called Ms. Register to build its case out of inferences arising from the invocation.

■ Under these circumstances, the trial court abused its discretion in overruling Mr. Register's objections and allowing Ms. Register to invoke her Fifth Amendment

right in the jury's presence.[3]  Mr. Register's sole point is granted.

## Conclusion

Therefore, we reverse the conviction and sentence and remand the case to the trial court for a new trial as to first-degree statutory sodomy for the incident on Memorial Day weekend.

MARTIN, P.J., and MITCHELL, J. concur.

**3.** It may be appropriate to call a witness to the stand and make him or her assert the Fifth Amendment right because the consequences of such an act—a possible finding of criminal contempt and imprisonment—may lead even the most recalcitrant witness to relent and testify.  However, when there is no reasonable expectation that the witness will provide legitimate testimony in addition to invoking the privilege against self-incrimination, the witness should be put on the stand outside of the presence of the jury.  If, in this situation, the witness elects to testify, he or she may be called back to the stand in the presence of the jury.